Philip GEORGE, et al.

v.

John L. CARUSONE, et al.

Civ. Nos. 3–90–156 (WWE), 3–91–772 (WWE).

United States District Court, D. Connecticut.

March 24, 1994.

Jeremiah J. Morytko, Carrozzella, Richardson, Morytko & Carrozzella, Wallingford, CT, for plaintiffs.

John R. Williams, the Law Offices of John R. Williams, New Haven, CT, for consolidated plaintiff.

Stephen P. Fogerty and Mark A. Newcity, Halloran & Sage, Hartford, CT, for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiffs Anthony DellaRocco, Bret Houghwout, Bruce Houghwout, Nancy Houghwout, and Charles Watts[1] brought this action against defendants John Ambrogio, John L. Carusone, David E. Dixon, the Hamden Police Commission, and the Town of Hamden alleging violations of Title III of the Omnibus Crime Control and Safe Streets Act

---

1. On March 23, 1993, Phillip George, Edna George, and Germain Fuller were terminated as

of 1968, 18 U.S.C. § 2510–2520 ("Title III"), 42 U.S.C. § 1983, and several state law theories of liability. The court consolidated the case with a separate action brought by plaintiff Charles Goldson in which he asserts that defendant John Ambrogio is liable under Title III and § 1983. Defendants have moved for summary judgment on all counts against all plaintiffs. For the following reasons, defendants' motion will be granted in part and denied in part. For the same reasons, plaintiffs' cross-motion for summary judgment will be denied.

## I. FACTS

The genesis of this case traces back to the installation of a telephone system at the Hamden Police Station ("HPD"). The system, known as the Horizon System, was connected to a recording device so that nearly all incoming and outgoing calls were taped. The system recorded all but three of the phones at the HPD. It recorded telephone conversations involving arrestees who used the phones in the cell block area. Similarly, the system recorded conversations involving Hamden police officers who used the station's phones.

Defendants emphasize evidence that they took several precautions to alert persons using the phones to the system's extensive recording capabilities. Sergeant William Gibson met with newly hired officers and oriented them to the operation of the phone system. HPD officials issued memoranda to all personnel informing them that incoming and outgoing calls were subject to being recorded. An audible beep purportedly could be heard on telephone calls to and from the dispatcher, the purpose of which was to notify those linked to the phone system that their conversations were being recorded. There is also evidence that HPD officials affixed warning labels to many of the phones.

Defendants' evidence notwithstanding, it is possible that persons unfamiliar with HPD phones would not know of the widespread taping of phone conversations. It is undis-

plaintiffs in this litigation.

puted that the audible beep was not a feature on phones used in the cell block. Moreover, the record is ambiguous as to whether warning labels were affixed to the phones actually used by the plaintiffs.

In November, 1986, the police arrested plaintiffs Nancy and Bret Houghwout for possession of marijuana and possession with intent to sell. Shortly after their arrests, Nancy and Bret Houghwout were detained at the Hamden Police Department. From the cell block, Nancy telephoned her son, Bruce, at the family residence. The police recorded Nancy's conversation with Bruce and prepared a transcript of the conversation. The Houghwouts reviewed the transcript in January or February of 1987.

Two of the plaintiffs, DellaRocco and Watts, are officers of the HPD and were employed in this capacity throughout HPD's use of the wiretap at issue. Defendants' evidence strongly suggests that DellaRocco and Watts knew about the station's recording device and the extent of its use. As HPD officers who regularly used the phones, they had numerous opportunities to familiarize themselves with the system. Officials circulated memoranda to all personnel alerting them to the taping of phone conversations. In addition, HPD employees frequently discussed the fact that their phone conversations were recorded.

With respect to plaintiff Charles Goldson, the police arrested him in 1988 for first degree robbery and fourth degree larceny. While at the HPD, Goldson used the phones to contact a friend and arrange bond. The police recorded his conversations and later erased the tapes pursuant to a tape retention schedule.

By 1990, the recording system used by the HPD received considerable negative publicity. HPD subsequently restricted the recording of telephone calls to its 911 emergency lines.

## II. DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a

matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### A. *Statute of Limitations*

Defendants assert that the applicable statutes of limitation bar all claims under Title III involving interceptions that occurred prior to November, 1987, and all remaining claims involving alleged misconduct that occurred prior to November, 1986.

■ Title III expressly limits the time within which to file a civil action for illegal wiretapping. "A civil action under [Title III] may not be commenced later than two years after the date upon which the claimant first had a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). The three year limitations period of Conn. Gen.Stat. § 52–577 governs all other claims in this action. Section 52–577's limitations period accrues from the date on which a plaintiff discovers or reasonably should have discovered the essential elements of a cause of action. *Sandstrom v. Chemlawn Corp.*, 759 F.Supp. 84, 86 n. 1 (D.Conn.1991); *Lambert v. Stovell*, 205 Conn. 1, 6, 529 A.2d 710 (1987).

■ Turning first to the claims of Bret, Bruce, and Nancy Houghwout, undisputed evidence indicates that these plaintiffs discovered the HPD wiretapping scheme no later than February, 1987. In January or February, 1987, in connection with a criminal action against Nancy Houghwout, the Houghwouts reviewed a transcript of a conversation between Nancy and her son, Bruce.

The conversation had been transcribed from HPD's tape recordings. Having reviewed the transcript, the Houghwouts either discovered or should have discovered that HPD had recorded their conversations. Their failure to bring suit against defendants until the passage of more than three years from the date they discovered or should have discovered the wiretap bars *all* of their claims.

■ The applicable statutes of limitation also bar the bulk of the allegations brought by DellaRocco and Watts. As discussed more fully below, these two plaintiffs learned of HPD's wiretap system shortly after its installation in 1981. Their Title III allegations are barred by § 2520(e) to the extent that they allege illegal wiretapping prior to April 3, 1988. Their other claims are barred by § 52–577 insofar as they involve alleged misconduct occurring prior to April 3, 1987. To the extent that the claims of DellaRocco and Watts are *not* time-barred, the court will review the merits of these claims. The court will also review the merits of Goldson's claims against Ambrogio.[2]

## B. *Title III, the Wiretap Statute*

Defendants contend that as a matter of law the HPD recording scheme did not constitute an illegal wiretap. Title III, the federal wiretap statute, prohibits the intentional interception of any wire, oral, or electronic communication. 18 U.S.C. § 2510–2520.

### 1. *"Intercept"*

■ An initial question is whether defendants "intercepted" plaintiffs' conversations. Section 2510(4) defines intercept as "the *aural or other acquisition* of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." (emphasis added.) Judicial gloss regarding this definition explains that "when the contents of a wire communication are captured or redirected in any way, an interception occurs at that time." *United States v. Rodriguez*, 968 F.2d 130, 136 (2d

Cir.), *cert. denied,* — U.S. —, —, 113 S.Ct. 139–140, 121 L.Ed.2d 92 (1992).

In the present case, there is no dispute that HPD recorded the plaintiffs' telephone conversations. Put in the context of the statutory language, HPD redirected and captured plaintiffs' phone conversations so as to effectuate an "acquisition of the contents" of their communications. Defendants' systematic recording of phone conversations falls squarely under the definition of "intercept."

Defendants maintain that they did not "intercept" any communications because they never actually listened to the recordings at issue. Their argument is misplaced. "Intercept" is not limited to "aural acquisitions," acquisitions in which a person actually hears a communication. Instead, Congress crafted a broader definition that covers "other acquisitions." The language "other acquisitions" presupposes the possibility that one can "intercept" a communication without hearing it. The court concludes that irrespective of whether defendants actually replayed the taped conversations and heard them, they intercepted plaintiffs' communications for purposes of Title III liability.

### 2. *"Intentionally Intercepts"*

■ Defendants also assert that plaintiffs cannot establish the requisite element of intent under Title III. In 1986, Congress amended Title III by changing the scienter requirement. Specifically, Congress replaced "willfully intercepts" with "intentionally intercepts." This heightened level of intent underscores the fact Title III does not proscribe *inadvertent* interceptions. S.Rep. No. 541, 99th Cong., 2d Sess., *reprinted in* 1986 U.S.C.C.A.N. 3555, 3577–78. In the present case, the undisputed evidence indicates that HPD designed its wiretap system to intercept phone conversations involving HPD lines. Although the parties dispute whether the recording device served a legitimate purpose, there is no question that HPD *intended* to record phone calls.

**2.** Defendants do not assert that plaintiff Goldson's claims are barred by the applicable statutes of limitation. Goldson's allegations involve misconduct that occurred in December, 1988, and January, 1989, outside the defendants' contested period. Defendants do not offer evidence or argument as to when Goldson learned of the wiretap. Presumably he learned of the wiretap when it received considerable notoriety in 1989 and 1990.

### 3. Consent

■ An intentional interception of a telephone conversation is not actionable if a party to the conversation gives prior consent to the interception. 18 U.S.C. § 2511(2)(d). Because Congress intended a broad construction of the consent exception, courts resoundingly have recognized the doctrine of implied consent. *United States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987), *cert. denied*, 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988); *see also United States v. Willoughby*, 860 F.2d 15, 19–20 (2d Cir.1988), *cert. denied*, 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989). "In the Title III milieu as in other settings, consent inheres where a person's behavior manifests acquiescence or a comparable diminution of his or her otherwise protected rights." *Griggs–Ryan v. Smith*, 904 F.2d 112, 116 (1st Cir.1990). A court can infer implied consent when the circumstances indicate that the party *knowingly agreed to* the surveillance. *Amen*, 831 F.2d at 378.

■ In the present case, plaintiffs DellaRocco and Watts impliedly consented to the recording of their phone conversations. Both of these plaintiffs were HPD officers, intimately involved in the operation of the police force. HPD affixed warning labels to many of the station's phones to alert users that their conversations would be recorded. HPD officials circulated memoranda to all employees informing them that the newly installed system would record incoming and outgoing phone calls. In addition, HPD employees regularly talked about the pervasive recording of their phone calls.

Plaintiffs DellaRocco and Watts do not offer a shred of evidence to refute the clear import of the foregoing facts, namely that they knew their conversations would be recorded. Despite knowledge of HPD's routine recording of phone calls, DellaRocco and Watts used the phones regularly. Their knowledge of the system and subsequent use of the phones is tantamount to implied consent to the interception of their conversations. "In the face of express notice, it cannot be gainsaid that plaintiff[s] impliedly consented to what later transpired." *Griggs–Ryan*, 904 F.2d at 118. It follows that defendants did not wiretap the conversations of DellaRocco and Watts in violation of Title III. *See also Willoughby*, 860 F.2d at 19–20 (when prison officials have advised inmates that their telephone calls will be monitored and have prominently posted notice that use of phones constitutes consent, use of phones constitutes implied consent).

■ By contrast, the court cannot discern as a matter of law any consent, express or implied, attributable to Goldson. Goldson was not an employee of HPD, but rather an arrestee who used HPD phones before and during his pretrial detention in the cell block. He may never have been privy to the warning labels and the audible beep so as to anticipate the HPD wiretap. Unless he knew of the HPD wiretap, Goldson could not have consented to the interception of his conversations. Issues of fact therefore persist with respect to whether Goldson consented to the interceptions at issue.

### 4. "Electronic, Mechanical, or Other Device"

■ The remaining issue regarding liability under Title III is whether defendant Ambrogio, the only defendant named in Goldson's complaint, intercepted Goldson's communications as a law enforcer "in the ordinary course of his duties." If so, then the recording instrument does not qualify as a "device" and plaintiff's Title III claim collapses. 18 U.S.C. § 2510(5)(a)(ii).

■ The ordinary course of business exception to Title III is a technical doctrine that lives and dies by the secretive nature of the interception. If a person surreptitiously records a telephone conversation, then the exception does not obtain. *United States v. Harpel*, 493 F.2d 346, 351 (10th Cir.1974) (telephone extension used without authorization or consent to surreptitiously record private phone conversation is not in ordinary course of business); *cf. United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir.1989) (finding interception in ordinary course of business where prisoners were *notified* that phone calls would be monitored). In the present case, as noted above, whether Goldson knew of the recording system is a disputed issue of fact. Similarly, the question of

whether the recording system was surreptitious is an issue for the trier of fact.

### C. *Plaintiffs' § 1983 Claims*

The gravamen of plaintiffs' constitutional claims is that the HPD wiretap deprived them of their privacy in violation of the Fourth Amendment.[3] The viability of each plaintiff's Fourth Amendment claim turns on whether that plaintiff had a legitimate expectation of privacy with respect to his phone conversations. In answering this question, courts have employed a two-pronged analysis. First, the person asserting a privacy interest must demonstrate a subjective expectation of privacy. Second, that person's subjective expectation must be one that society accepts as reasonable. *California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 1628, 100 L.Ed.2d 30 (1988); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *United States v. Paulino*, 850 F.2d 93, 97 (2d Cir.1988), *cert. denied*, 490 U.S. 1052, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989).

 In the present case, plaintiffs DellaRocco and Watts cannot surmount the initial hurdle. Defendants' uncontested evidence proves that these two plaintiffs knew of HPD's routine use of wiretaps. In choosing to use the phones, DellaRocco and Watts could not have expected that their conversations were private. Their Fourth Amendment claims are therefore meritless.

 With respect to Goldson's fourth amendment privacy rights, the court proceeds to the issue of qualified immunity. For the sake of clarity, the court first notes that Goldson is the only remaining plaintiff in this case. His claim is against defendant Ambrogio and none other. The question therefore is whether Ambrogio is qualifiedly immune from Goldson's § 1983 claim.

 Qualified immunity shields government officials from civil liability when they reasonably could have thought that their actions were consistent with the rights they allegedly violated. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were *'clearly established'* at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982)) (emphasis added). Although a constitutional right such as the right to privacy may be well established, a governmental official may act under circumstances that do not clearly implicate the right asserted. *O'Hagan v. Soto*, 725 F.2d 878, 879 (2d Cir.1984).

In the present case, the governing legal rules were not clearly established at the time of Goldson's detention. At that time, courts had not delineated the contours of a pretrial detainee's privacy rights. Relevant case law says little more than that a pretrial detainee's privacy rights are diminished. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979); *Willoughby*, 860 F.2d at 21 ("pretrial detainees may have some residual privacy interests that are protected by the Fourth Amendment"). Plaintiff does not cite and the court has not discovered case law that squarely details the Fourth Amendment privacy rights of a pretrial detainee whose phone conversations are recorded by arresting authorities. Moreover, there is no evidence that HPD taped Goldson's conversations with counsel.

Casting all of the evidence in Goldson's favor, the court cannot say with certainty that Ambrogio violated Goldson's constitutional right to privacy. Because the law is unsettled in this area, a reasonable officer would not have had a clear legal foundation

---

**3.** In their complaints, plaintiffs cite the First, Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth amendments to the United States Constitution. Defendants moved for summary judgment on all of these constitutional provisions. Plaintiffs have not opposed defendants' motion for summary judgment on the constitutional claims, with the apparent exception of the Fourth Amendment claim. Because the thrust of the constitutional claims is that HPD's wiretap scheme violated constitutional rights to privacy, the court has limited its analysis to the Fourth Amendment.

upon which to believe the wiretap violated Goldson's Fourth Amendment privacy rights. Ambrogio is qualifiedly immune from plaintiff's § 1983 claim.

## IV. CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment [# 42] is GRANTED with respect to all claims brought by plaintiffs Bret, Bruce, and Nancy Houghwout. Defendants' motion for summary judgment is GRANTED as to plaintiffs DellaRocco and Watts on their federal claims, i.e., those brought pursuant to Title III and § 1983. Defendant Ambrogio's motion for summary judgment is GRANTED with respect to plaintiff Goldson's § 1983 claim, and DENIED as to plaintiff Goldson's Title III claim. For the reasons stated herein, plaintiffs' cross-motion for summary judgment [# 49] is DENIED. What remains is Goldson's cause of action against Ambrogio for wiretapping in violation of Title III.