1997–NMCA–029

936 P.2d 882

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Eric COYAZO, Defendant–Appellant.**

**No. 17283.**

Court of Appeals of New Mexico.

March 11, 1997.

Certiorari Denied April 16, 1997.

---

Tom Udall, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

*OPINION*

DONNELLY, Judge.

1. Defendant pursues this interlocutory appeal from the trial court's order denying his motion to suppress evidence obtained by the monitoring of telephone calls from the Otero County Detention Center (Detention Center). Defendant argues on appeal that the trial court erred in denying his motion because the information obtained from such monitoring violated his right to privacy under this State's Abuse of Privacy Act, NMSA 1978, §§ 30-12-1 to -11 (Repl.Pamp.1994), and his constitutional rights against self-incrimination, unreasonable searches and seizures, and right to counsel guaranteed by the United States Constitution and the New Mexico Constitution. For the reasons discussed herein, we affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

2. Defendant was arrested on a charge of first-degree murder and ordered held in the Detention Center pending trial. During the time he was held in custody, he made several telephone calls to a former jail inmate. Based on statements made by Defendant during these telephone calls, he was indicted in a second case and charged with criminal solicitation to commit perjury, a fourth-degree felony.

3. At the hearing on Defendant's motion to suppress, both Defendant and the State presented oral testimony. Evidence adduced at the hearing indicated, among other things, that telephones available for use by inmates in the Detention Center have a notice posted next to them stating, " 'Conversations may be monitored and recorded.' "

4. Norman Mick, the administrator of the Detention Center, testified that the monitoring system had been in place for approximately three years and had been installed to assist in maintaining security. Mick also stated that he had received a request from Lt. Eddy Burks, an Alamogordo City Police Officer, asking him to monitor any telephone calls made by Defendant from the Detention Center. Burks was one of the officers in charge of investigating the murder charge pending against Defendant.

5. At the suppression hearing, testimony was presented that, in one of the monitored telephone calls, Defendant sought another person's assistance in defending against the pending murder charge. During this call, Defendant stated, among other things: "Aaron,...don't say nothing incriminating on the damn phone." The recipient answered, "Oh, okay," and Defendant replied, "cause they can record this shit."

6. Following the suppression hearing, the trial court adopted findings of fact and conclusions of law and denied Defendant's motion to suppress. The findings made by the trial court found, inter alia:

1. Defendant's phone calls were taped by jail [authorities] without his express consent.

2. All phones used by jail inmates have a sign which reads: "Conversations may be monitored and recorded" which is written in English [but] not in Spanish.

3. Defendant used one of these phones to place his phone calls.

. . . .

5. Defendant's calls were recorded by jail [administrators] on request of a detective with the Alamogordo Department of Public Safety investigating the murder charge.

. . . .

10. There is no claim that Defendant's calls were otherwise privileged.

11. The monitoring and recording system was obtained by the jail to help maintain security in the jail.

7. Based on its findings of fact, the trial court concluded, among other things, that Defendant did not have a reasonable expectation of privacy in telephone calls placed from the Detention Center and his act of placing "the telephone calls with knowledge that his calls were subject to monitoring and recording [constituted] consent [to such monitoring]."

*DISCUSSION*

8. Defendant argues that the trial court erred in failing to suppress the content of the telephone calls made by him from the Detention Center because the communica-

tions were protected under this State's Abuse of Privacy Act, Sections 30–12–2 to –11, and the protections guaranteed by the Fourth, Fifth, and Sixth Amendments to the United States Constitution, and Article II, Sections 10, 14, and 15 of the New Mexico Constitution, against unreasonable searches and seizures, the protections against self-incrimination, and his right to counsel. In examining these contentions we conduct a de novo review of the record to determine whether the trial court correctly applied the applicable law to the facts found by it in its decision-making process. *See State v. Attaway,* 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994).

9. We begin our review of Defendant's claims with an examination of the provisions of New Mexico's Abuse of Privacy Act. Section 30–12–1(C) of the Abuse of Privacy Act, among other things, prohibits interference with certain types of electronic communications, including "reading, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without the consent of a sender or intended recipient thereof." *Id.* Section 30–12–1 of the Abuse of Privacy Act excludes from its application, however, interference with, or the reception of electronic communications done:

(1) under a court order as provided in Sections 30–12–2 through 30–12–11 NMSA 1978; or

(2) by an operator of a switchboard or an officer, employee or agent of any communication common carrier in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his services or to the protection of rights or property of the carrier of such communication; or

(3) *by a person acting under color of law in the investigation of a crime, where such person is a party to the communication, or one of the parties to the communication has given prior consent to such interception, monitoring or recording of such communication.* [Emphasis added.]

10. The New Mexico Abuse of Privacy Act is patterned after Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 to 2522 (1994), as amended (Federal Act). Because of the similarities between the Federal Act and the New Mexico Abuse of Privacy Act in their use of consent as an exception to the restriction on intercepting communications, *compare* § 30–12–1(C) & (3) *with* 18 U.S.C. § 2511(2)(c) & (d), we find federal case law interpreting the "prior consent" requirements of the Federal Act instructive.

11. As observed in *United States v. Amen,* 831 F.2d 373, 378 (2d Cir.1987), legislative history of the Federal Act shows that Congress intended the consent requirement of the Act to be construed broadly, and a Senate report indicates that an individual's consent may be either express or implied from surrounding circumstances "indicating that [the defendants] knowingly agreed to the surveillance." *See also United States v. Willoughby,* 860 F.2d 15, 19–20 (2d Cir.1988).

12. The provisions of the Abuse of Privacy Act evince a clear showing that the legislature intended to restrict the interception of telephone or other electronic communications where there has been no "prior consent" by one of the parties thereto, or where there has been no court authorization for the interception. Section 30–12–1; *see also Arnold v. State,* 94 N.M. 381, 383–84, 610 P.2d 1210, 1212–13 (1980) (decided under previous law which limited consent to the sender of the communication under Section 31–12–1(C) and did not contain an exception for investigation of crime with consent of one of the parties to the communication comparable to Section 31–12–1(3)). Under the express provisions of Section 30–12–1(C) or (3), however, where the consent of one of the parties to the communication has been obtained, the monitoring and use of such communications by authorities is permitted.

13. In construing the statutory requirement of "consent" contained in Section 30–12–1 of the Abuse of Privacy Act, we believe our legislature, like Congress in its enactment of the Federal Act, intended that proof of an individual's consent may be shown by circumstantial evidence. *See also United States v. Green,* 842 F.Supp. 68, 72

(W.D.N.Y.1994) (consent for recording telephone calls may be implied); *George v. Carusone*, 849 F.Supp. 159, 164 (D.Conn.1994) (court can infer implied consent when circumstances indicate party knowingly agreed to surveillance); *Willoughby*, 860 F.2d at 20–21 (use of prison telephone, after being placed on notice that calls are monitored, constitutes consent to monitoring); *cf. Griggs–Ryan v. Smith*, 904 F.2d 112, 116–17 (1st Cir.1990) (individual's behavior may manifest consent to invasion of rights protected under federal statute prohibiting interception of electronic communication). *See generally* Kenneth J. Rampino, Annotation, *Admissibility, in Criminal Prosecution, of Evidence Obtained by Electronic Surveillance of Prisoner*, 57 A.L.R.3d 172 (1974).

14. In *People v. Myles*, 62 Ill.App.3d 931, 20 Ill.Dec. 64, 379 N.E.2d 897 (1978), the Appellate Court of Illinois considered a case factually similar to the instant case. In *Myles*, as in the present case, the defendant sought suppression of evidence obtained from police monitoring of a jail telephone, and asserted a violation of his right to privacy and a violation of Illinois' privacy act. As a result of such monitoring, the police overheard a telephone conversation between Myles and his wife and obtained information concerning a weapon believed to have been used in a murder. *Id.*, 20 Ill.Dec. at 65–66, 379 N.E.2d at 898–99. The jail telephone used by the defendant was located near a large sign which read, "All calls monitored." A similar sign with smaller lettering was also placed on the wall next to the telephone. *Id.*, 20 Ill.Dec. at 65, 379 N.E.2d at 898.

15. The court in *Myles* held that the Illinois statute that prohibited eavesdropping in order to hear or record any part of a conversation "without the consent of all parties to the conversation or without the consent of one party and at the request of a State's Attorney," *id.* 20 Ill.Dec. at 67, 379 N.E.2d at 900, did not preclude police from monitoring the inmate's telephone call where he had been adequately apprised that telephone calls were subject to monitoring and the telephone calls were made from or directed to an inmate. The Illinois court affirmed the order

of a lower court, denying the defendant's motion to suppress, stating:

> We do not believe the General Assembly intended to prohibit the monitoring of outgoing calls from a jail inmate under the circumstances [here].
>
> ... A phone maintained in a jail for prisoner use shares none of the attributes of privacy of a home or automobile or even a public phone booth. *Lanza v. New York* (1962), 370 U.S. 139 [82 S.Ct. 1218, 8 L.Ed.2d 384] ...; see *Katz v. United States* (1967), 389 U.S. 347 [88 S.Ct. 507, 19 L.Ed.2d 576].... Lawful imprisonment [erodes] many of the prisoner's rights.

*Myles*, 20 Ill.Dec. at 67, 379 N.E.2d at 900.

16. We are aware that some courts are not persuaded by the above analysis. In particular, the Seventh Circuit Court of Appeals and the District Court of Alaska have stated that "it tortures the meaning of ... consent" to permit a court to find consent based on facts showing no more than the taking of a risk. *See United States v. Daniels*, 902 F.2d 1238, 1245 (7th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *United States v. Feekes*, 879 F.2d 1562, 1565 (7th Cir.1989); *United States v. Cheely*, 814 F.Supp. 1430, 1443 (D.Alaska 1992), *aff'd*, 21 F.3d 914 and 36 F.3d 1439 (9th Cir.1994). We are not persuaded by the dicta in those cases, and we believe that the facts of this case show more than the mere taking of a risk. Although the facts in *Daniels* arose in a jail-house setting, the example given by the court referred to events outside a jail—walking late at night in a dangerous neighborhood is not a consent to being robbed. Moreover, in the example used in *Daniels*, there is neither a specific warning of either the danger or of the consequences nor evidence of specific knowledge that the danger is likely to materialize. In the situation in this case, in contrast, where Defendant read a specific warning and specifically demonstrated his understanding of it, and where the monitoring of the conversations was in part for Defendant's safety and benefit, we believe that the circumstances permitted the trial court to find consent.

17. Defendant also asserts that there can be no showing that his statements

were voluntary or that he waived his right to privacy because he was not advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to the recording of his telephone calls. Although the State bears the burden of establishing by a preponderance of the evidence that his consent to monitoring was voluntary and consensual, the trial court could properly conclude that Defendant's Fifth Amendment right against self-incrimination and his rights under Article II, Section 15 of the New Mexico Constitution were not implicated here because there is no evidence that he was compelled, coerced, or improperly influenced into making the calls in question. *State v. Ramirez,* 89 N.M. 635, 639, 556 P.2d 43, 47 (Ct.App.1976) ("right against self-incrimination must involve an element of coercion"); *cf. State v. Munoz,* 111 N.M. 118, 120, 802 P.2d 23, 25 (Ct.App.1990) (state must establish by preponderance of evidence voluntariness of the defendant's statement from totality of circumstances). Moreover, the facts of this case do not indicate that law enforcement personnel initiated any questioning of Defendant.

18. In the instant case, Defendant knew telephone calls from the Detention Center were often monitored and there could be no reasonable expectation of privacy. *See State v. Ferguson,* 106 N.M. 357, 358, 743 P.2d 113, 114 (1987) (jail inmates possess diminished right of privacy). Defendant's admonishment to the recipient of his telephone call to not say anything incriminating clearly indicates he was cognizant that his conversation was subject to being monitored. Under such circumstances, the trial court could reasonably determine that Defendant consented to the monitoring of his telephone calls; hence, there was no unreasonable search or seizure or violation of his right to privacy. *Cf. State v. Trevino,* 113 N.M. 804, 810, 833 P.2d 1170, 1176 (Ct.App.1991) (videotaping of jail inmate's telephone calls held proper based on need for maintaining security), *aff'd,* 113 N.M. 780, 833 P.2d 1146 (1992); *State v. Lucero,* 96 N.M. 126, 128, 628 P.2d 696, 698 (Ct.App.1981) (jail inmates have no reasonable expectation of privacy and detention center officials may exercise constant surveillance, including eavesdropping on inmates' conversations).

19. Defendant additionally argues that the monitoring of his telephone calls was improper because it violated his right to the assistance of counsel under the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution. The Sixth Amendment protects, among other things, the confidentiality of communications between an attorney and his client. *See United States v. Rosner,* 485 F.2d 1213, 1224 (2d Cir.1973). This protection attaches, however, only where the parties intend that the communication be confidential and under circumstances wherein the communication between a defendant and his attorney can reasonably be expected to be confidential. *United States v. Noriega,* 917 F.2d 1543, 1551 (11th Cir.1990); *see also State v. Aragon,* 109 N.M. 632, 634–36, 788 P.2d 932, 934–36 (Ct.App.1990) (right to counsel ordinarily attaches when judicial proceedings have been initiated, but there is no violation of right to counsel where state did not deliberately elicit information and did no more than listen). Nothing in this opinion, however, should be considered as approving the unauthorized monitoring of telephone conversations between an inmate and his or her attorney. There is no showing in the instant case that Detention Center officials monitored telephone calls to or from Defendant's attorney.

20. In advancing his claim of a violation of his right to counsel under the federal and state constitutions, Defendant further asserts that it was improper to record his conversations without advising him of his right to remain silent and his right to counsel. On the facts appearing here, we disagree. Although Defendant correctly notes that his right to counsel in the pending murder case had attached, *see Aragon,* 109 N.M. at 635, 788 P.2d at 935, this does not provide a basis to exclude his statements in the second case. *See Maine v. Moulton,* 474 U.S. 159, 180 n. 16, 106 S.Ct. 477, 489 n. 16, 88 L.Ed.2d 481 (1985) ("Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of

those offenses."); *Mealer v. Jones,* 741 F.2d 1451, 1453 (2d Cir.1984) (where statements elicited in absence of counsel concern a new, as yet uncharged crime, those statements are admissible in a trial on a subsequent offense); *United States v. Capo,* 693 F.2d 1330, 1339 (11th Cir.1982) (en banc) (statements relating to conspiracy charge, made after indictment on possession of narcotics charge, are admissible in conspiracy trial).

21. Under the circumstances existing here, there is no showing of any violation of Defendant's attorney-client privilege, his privilege against self-incrimination, protection against unreasonable searches and seizure, or his right of privacy.

*CONCLUSION*

22. The trial court's order denying Defendant's motion to suppress evidence is affirmed.

23. IT IS SO ORDERED.

APODACA and PICKARD, JJ., concur.