2007-NMCA-108

165 P.3d 1145

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Geechie Devane TEMPLETON,
Defendant–Appellant.**

No. 25,845.

Court of Appeals of New Mexico.

June 20, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

Fredlund & Bryan, Jon C. Fredlund, Hobbs, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant appeals his conviction of trafficking a controlled substance, contrary to NMSA 1978, § 30–31–20 (2006). Before trial, Defendant sought to suppress tape recordings of telephone calls made in jail on the grounds that jail officials recorded his telephone conversations in violation of his right to privacy under the Abuse of Privacy Act, NMSA 1978, §§ 30–12–1 to –11 (1963, as amended through 1979). The district court denied Defendant's motion. In addition to asserting Abuse of Privacy Act violations, Defendant contends on appeal that his Fourth Amendment rights under the United States Constitution and his rights under Article II, Section 10 of the New Mexico Constitution were violated by the jail officials. We reverse in part, affirm in part, and remand for a new trial.

## BACKGROUND

{2} On June 9, 2004, Hobbs police officers attempted to pull over Defendant's vehicle because Defendant had an outstanding municipal warrant. Defendant failed to stop for the officers and eventually fled on foot from his car. One of the officers testified that Defendant was wearing a Los Angeles Lakers jersey as he ran away.

{3} Defendant was eventually found by one of the officers in the courtyard of an apartment complex hiding next to a fence and behind an old refrigerator. He was no longer wearing the Lakers jersey and was holding a white t-shirt in his hands. Defendant was handcuffed as he walked out from behind the refrigerator. The arresting officer found a Lakers jersey on the ground where Defendant had been hiding. A large plastic bag containing cocaine was found underneath the refrigerator.

{4} Defendant was subsequently booked at the Hobbs City Jail. Shortly thereafter, Defendant used the telephone in the booking area to call his girlfriend. During the call, Defendant directed his girlfriend to pick up a

necklace and keys near the courtyard where Defendant had hidden from the police. On appeal, the State characterizes the conversation between Defendant and his girlfriend as "guarded" and asserts that they were speaking in code.

{5} On June 14, 2004, Defendant made a second telephone call. During this conversation, Defendant made a number of statements regarding drugs and also admitted to owning a Lakers jersey. Defendant also expressed concern that he may face federal charges for his actions. Both telephone calls were recorded by jail officials.

{6} Prior to trial, Defendant orally argued to exclude at trial the tape recordings of the telephone conversations from jail. Defendant asserted that under *State v. Coyazo*, 1997–NMCA–029, 123 N.M. 200, 936 P.2d 882, the conversations could not be admitted unless the State could establish that Defendant had notice that his telephone conversations were being monitored. Treating Defendant's oral motion as a motion to suppress, the district court ruled that both conversations were admissible because Defendant had no reasonable expectation of privacy while in jail. Defendant was later convicted by a jury.

## DISCUSSION

{7} On appeal, Defendant argues that the district court erred by failing to suppress the tape recordings of his two telephone calls because the calls were protected by the Abuse of Privacy Act, the Fourth Amendment to the United States Constitution, and Article II, Section 10 of the New Mexico Constitution. Defendant further contends that if the tape recordings are excluded, there is insufficient evidence to support the verdict against him and the charge against him should therefore be dismissed. We conclude that although the district court properly concluded that Defendant had no reasonable expectation of privacy, and therefore that no constitutional violation had occurred, the court failed to properly consider the provisions of the Abuse of Privacy Act. In applying the provisions of the Abuse of Privacy Act, we hold that the tape of Defendant's first telephone call should have been excluded. As to the second telephone call, we hold

that it was not obtained in contravention of Defendant's rights under the Abuse of Privacy Act and that it is therefore admissible at trial. We reject Defendant's remaining contentions.

## A. Motion to Suppress

### 1. Standard of Review

{8} Defendant's appeal of the denial of his motion to suppress presents a mixed question of law and fact. *State v. Gerald B.*, 2006–NMCA–022, ¶ 13, 139 N.M. 113, 129 P.3d 149. We will defer to the district court's findings of fact, provided that such findings are supported by substantial evidence. *State v. Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856. "[A]ll reasonable inferences in support of the [district] court's decision will be indulged in, and all inferences or evidence to the contrary will be disregarded." *State v. Boeglin*, 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.1983). After accepting the district court's factual findings as accurate, we then determine whether the district court correctly applied the law to the facts. *Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856. We "review the application of the law to these facts, including determinations of reasonable suspicion, under a de novo standard of review." *State v. Patterson*, 2006–NMCA–037, ¶ 13, 139 N.M. 322, 131 P.3d 1286.

### 2. Abuse of Privacy Act

{9} The Abuse of Privacy Act "prohibits interference with certain types of electronic communications, including 'reading, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without the consent of a sender or intended recipient thereof.'" *Coyazo*, 1997–NMCA–029, ¶ 9, 123 N.M. 200, 936 P.2d 882 (quoting § 30–12–1(C)). Interference with electronic communications, however, may be lawful when done under certain circumstances, including:

(1) under a court order as provided in Sections 30–12–2 through 30–12–11 NMSA 1978; or

(2) by an operator of a switchboard or an officer, employee or agent of any com-

munication common carrier in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his services or to the protection of rights or property of the carrier of such communication; or

(3) by a person acting under color of law in the investigation of a crime, where such person is a party to the communication, or one of the parties to the communication has given prior consent to such interception, monitoring or recording of such communication.

Section 30–12–1(E). In the present case, we are concerned with the third exception, which excludes those communications in which one of the parties to the communication has consented to its monitoring or recording. Section 30–12–1(E)(3); see Coyazo, 1997–NMCA–029, ¶ 12, 123 N.M. 200, 936 P.2d 882 ("The provisions of the Abuse of Privacy Act evince a clear showing that the legislature intended to restrict the interception of telephone or other electronic communications where there has been no 'prior consent' by one of the parties thereto[.]").

{10} In the case at bar, it is evident from the record that the district court did not consider the provisions of the Abuse of Privacy Act when determining whether the tape recordings of Defendant's phone conversations should be suppressed. Defendant, relying on Coyazo, argued to the district court that the tapes could not be admitted if Defendant did not have notice that his phone calls could be monitored. In response, the State argued that Coyazo's reliance on State v. Lucero, 96 N.M. 126, 628 P.2d 696 (Ct.App. 1981), a case dealing in part with a prisoner's Fourth Amendment rights, demonstrated that inmates have no expectation of privacy in prison, and the fact that an inmate was not given notice that his or her calls may be monitored does not necessarily mean that his or her rights were violated. The district court apparently agreed with the State, concluding that because inmates do not have an expectation of privacy in prison, the tapes were admissible. The district court further observed that this Court in Coyazo was primarily concerned with conversations between an inmate and his or her lawyer and was

therefore distinguishable from the case at bar.

{11} We believe that the State's argument below, and the district court's apparent reliance on it, stems from a misreading of Coyazo. Contrary to the State's assertions below, this Court in Coyazo did not rely on Lucero in concluding that an inmate's rights under the Abuse of Privacy Act were not violated. Rather, our Court's citation to Lucero was in the context of a discussion of whether the inmate's constitutional rights were violated by the monitoring of his phone calls. See Coyazo, 1997–NMCA–029, ¶ 18, 123 N.M. 200, 936 P.2d 882. Unlike Coyazo, Lucero does not discuss the Abuse of Privacy Act nor does it involve electronic communications. We further observed that Coyazo involved telephone calls made from an inmate to a former inmate, not to a lawyer, and we therefore do not believe that Coyazo can be characterized as dealing primarily with calls between inmates and their attorneys. See id. ¶ 2.

{12} Although inmates have a diminished expectation of privacy in prison, they are nonetheless protected by the provisions of the Abuse of Privacy Act. See generally Coyazo, 1997–NMCA–029, ¶¶ 8–16, 123 N.M. 200, 936 P.2d 882. Thus, to the extent that the district court below relied on Defendant's lack of an expectation of privacy while in jail in concluding that the tapes were admissible, we hold that the court misapplied the law. Rather, the district court's focus should have been on the question of whether Defendant consented to the monitoring of his telephone calls such that the third exception to the coverage of the Abuse of Privacy Act was satisfied.

{13} Although the district court did not properly apply the law in deciding whether the tapes were admissible, we review the entire record to determine whether it supports the State's argument on appeal that Defendant consented to the monitoring and recording of his telephone calls, and therefore the provisions of the Abuse of Privacy Act were not violated. See State v. Martinez, 94 N.M. 436, 439–40, 612 P.2d 228, 231–32 (1980) (holding that an appellate court considers the entire record on appeal, not

just the evidence presented at the suppression hearing, in affirming the denial of a motion to suppress); *State v. Beachum,* 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App. 1972) (stating that this Court will affirm if the district court is right for any reason, as long as the opposing party had an opportunity to respond).

{14} In determining whether Defendant's telephone calls were recorded in violation of the Abuse of Privacy Act, the dispositive question in the present case is whether Defendant consented to the recording. *See* § 30–12–1(E)(3); *see also Coyazo,* 1997–NMCA–029, ¶ 9, 123 N.M. 200, 936 P.2d 882 (recognizing that a party's *"prior consent"* to the recording or monitoring of communications constitutes an exception to the Abuse of Privacy Act). In *Coyazo,* our Court recognized that an individual's prior consent under the Abuse of Privacy Act can either be express or implied. 1997–NMCA–029, ¶ 11, 123 N.M. 200, 936 P.2d 882. In considering whether an individual's prior consent can be implied, we further acknowledged in *Coyazo* that "proof of an individual's consent may be shown by circumstantial evidence." *Id.* ¶ 13. Additionally, we stated that because "[t]he New Mexico Abuse of Privacy Act is patterned after Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510 to 2522 (1994), ... we find federal case law interpreting the 'prior consent' requirements of the Federal Act instructive." *Coyazo,* 1997–NMCA–029, ¶ 10, 123 N.M. 200, 936 P.2d 882; *see State v. Manes,* 112 N.M. 161, 165, 812 P.2d 1309, 1313 (Ct.App.1991).

{15} In the prison context, implied consent is typically found where an inmate has been given notice that his or her phone calls may be monitored. *Coyazo,* 1997–NMCA–029, ¶¶ 13–15, 123 N.M. 200, 936 P.2d 882 (citing and discussing cases). Adequate notice has been found to include signs near telephones indicating that calls may be monitored, information in orientation or prison handbooks provided to inmates, prison lectures or discussions regarding monitoring policies, forms signed by inmates consenting to monitoring procedures, recordings on telephones that indicate the monitoring policy prior to the placing of a call, and/or notice provided in the Code of Federal Regulations. *See United States v. Friedman,* 300 F.3d 111, 122 (2d Cir.2002); *United States v. Horr,* 963 F.2d 1124, 1126 (8th Cir.1992); *United States v. Rivera,* 292 F.Supp.2d 838, 840–44 (E.D.Va. 2003). *But see United States v. Daniels,* 902 F.2d 1238, 1245 (7th Cir.1990) (stating that to conclude that "a provision in the Code of Federal Regulations which says that inmates' phone calls may be monitored" constitutes notice to prison inmates "is the kind of argument that makes lawyers figures of fun to the lay community, and although a respected sister court has accepted it, we place no weight on it." (citation omitted)). An inmate's decision to make a telephone call after receiving notice in one of the above methods has been construed as an implied consent to the monitoring. *Rivera,* 292 F.Supp.2d at 844 (holding that the defendant "plainly consented to the recording and monitoring of his telephone calls at both facilities because he used the telephone after receiving notice that his calls would be recorded and/or monitored"); *see Coyazo,* 1997–NMCA–029, ¶¶ 3, 16, 123 N.M. 200, 936 P.2d 882 (concluding that the defendant consented to the recording and monitoring of his telephone calls where signs posted next to prison phones indicated that calls may be monitored or recorded). *But see United States v. Cheely,* 814 F.Supp. 1430, 1443 (D.Alaska 1992) (disagreeing that the act of making a telephone call after receiving notice that the call may be monitored indicates consent to the monitoring on the grounds that acquiescence is not the same as consent), *aff'd,* 36 F.3d 1439 (9th Cir.1994).

{16} It is undisputed that Defendant's first telephone call was made in the booking area on the same day of his arrest. At the pre-trial hearing, the State admitted that individuals making calls from the telephone in the booking area are not given notice that their calls may be monitored. On appeal, the State does not contend that Defendant was given notice that his telephone call on June 9th may be monitored, but instead argues that the facts demonstrate that Defendant was aware that calls may be monitored because he spoke in code. As such, the State argues that Defendant's consent to the

monitoring and recording of his first telephone call can be implied. We disagree.

{17} Initially, we observe that the State does not cite any authority in support of its contention that speaking in code evidences knowledge of monitoring and thus constitutes implied consent to the monitoring of one's communications. Indeed, some cases addressing the issue of a prison inmate speaking in code have expressed doubt as to whether such actions demonstrate the inmate's implied consent to the monitoring of telephone calls. *See Daniels,* 902 F.2d at 1245 ("Taking a risk is not the same thing as consenting to the consequences if the risk materializes."); *United States v. Feekes,* 879 F.2d 1562, 1565 n. 5 (7th Cir.1989) ("If anything the use of code indicates non-consent.").

{18} Other cases have considered an inmate's speaking in code as evidence that an inmate had received actual notice that his or her calls may be monitored. *See Friedman,* 300 F.3d at 121–23 (observing that an inmate's use of cryptic language evidenced his "understanding of the possibility that the calls would be monitored or taped" where signs indicating this possibility were posted by some, but not all, prison telephones); *Rivera,* 292 F.Supp.2d at 844 (considering an inmate's talking in code as additional evidence of the inmate's consent to monitoring where inmate was also told by prison officials that his calls may be monitored). Thus, to the extent that an inmate disputes that he or she had notice of a prison's monitoring or recording policy, speaking in code tends to support the inference that the inmate did receive such notice.

{19} In the absence of any evidence that Defendant had actual notice his calls may be monitored, we do not believe that his talking in code is sufficient to establish his implied consent. For one, it is not readily apparent from the tapes that Defendant is speaking in code, although we agree with the State's characterization of Defendant's conversation as seeming "guarded." Importantly, the district court, after reading the transcript of Defendant's telephone calls, found that there was no indication in Defendant's conversations that he knew that his calls were being recorded. As such, we remain doubtful that Defendant's conversations alone evidence an understanding by Defendant that his June 9th telephone call was being monitored or recorded.

{20} Additionally, our review of the transcripts of Defendant's telephone call on June 9th reveals that Defendant was interrupted more than once during the call by others at the prison. Thus, Defendant's "guarded" conversation may also be indicative of the fact that there were others nearby while Defendant was talking on the telephone. It would therefore appear that the motivation behind Defendant's speaking guardedly may be subject to more than one explanation, as opposed to the State's assertion that it clearly establishes Defendant's knowledge of the telephone's monitoring.

{21} In the absence of any facts establishing that Defendant had actual notice that his telephone calls made from the booking area may be monitored, we do not believe that Defendant's speaking in code alone establishes his implied consent to the monitoring or recording of his telephone calls. As such, we reverse the district court's denial of Defendant's motion to suppress the tape recording of the June 9th telephone call.

{22} Defendant's second telephone call appears to differ in a number of important ways from Defendant's first telephone call. Although it is not readily apparent from the record, we believe that it is reasonable to infer that Defendant was no longer in the booking cell when he made the second telephone call. We note that the second call took place five days after Defendant's first call. As such, we agree with the State's assertion that by June 14th, Defendant had been transferred from the booking area to a holding cell or general population. Notably, Defendant did not file a reply brief attacking or otherwise controverting the State's contentions regarding the location of the second telephone call. *See Delta Automatic Sys., Inc. v. Bingham,* 1999–NMCA–029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (stating that the failure to respond to contentions made in an answer brief "constitutes a concession on the matter").

{23} As noted by the State before trial, telephones in the general population, as opposed to those in the booking area, have a recording indicating before a call is placed that the call may be monitored or recorded. This assertion was further supported at trial by the testimony of one of the police officers and also by Defendant's own admissions. Specifically, the police officer testified that at the time a telephone call is made by an inmate, the inmate is told via recording that the call may be monitored. Additionally, Defendant testified that although there is no notice regarding possible monitoring or recording of telephone calls in the booking area, telephones in the holding cell and in general population do give such notice. It does not appear to be disputed, therefore, that inmates who make telephone calls from the holding area or general population are given notice that their calls may be monitored or recorded.

{24} Because Defendant was no longer in the booking area when he made his June 14th telephone call and because the record indicates that telephones outside of the booking area do provide notice that calls may be monitored, we conclude that Defendant impliedly consented to the monitoring and recording of his second telephone call. As previously held in *Coyazo*, an inmate's use of a telephone after receiving notice that his or her calls may be monitored or recorded constitutes implied consent to the monitoring. 1997–NMCA–029, ¶ 16, 123 N.M. 200, 936 P.2d 882. Consent, express or implied, is an exception to the Abuse of Privacy Act's provisions barring interference with electronic communications. *Id.* ¶¶ 9, 12; *see* § 30–12–1. We therefore affirm the district court's denial of Defendant's motion to suppress the tape recording of his June 14th telephone call, albeit on different grounds. *See Beachum*, 83 N.M. at 527, 494 P.2d at 189 ("A decision of the trial court will be upheld if it is right for any reason.").

### 3. Federal and State Constitutional Rights

{25} In addition to arguing that his telephone calls were recorded in contravention of the Abuse of Privacy Act, Defendant contends that his Fourth Amendment rights under the United States Constitution and his rights under Article II, Section 10 of the New Mexico Constitution were violated by the prison officials' conduct. Because we hold that the monitoring and recording of Defendant's June 9th telephone call violated the Abuse of Privacy Act and is therefore inadmissible, we do not decide whether this also constituted a violation of Defendant's constitutional rights.

{26} With respect to the second telephone call, which was made after Defendant received notice of the prison's monitoring policy, we conclude that Defendant's constitutional rights were not violated. Prison inmates have a diminished right of privacy while in prison. *State v. Trevino*, 113 N.M. 804, 810, 833 P.2d 1170, 1176 (Ct.App.1991), *aff'd in part by State v. Orosco*, 113 N.M. 780, 833 P.2d 1146 (1992), and *aff'd in part by State v. Trevino*, 116 N.M. 528, 865 P.2d 1172 (1993). Moreover, where an inmate has notice of a prison's monitoring policies and consents to such policies, there can be "no unreasonable search or seizure or violation of [the inmate's] right to privacy." *Coyazo*, 1997–NMCA–029, ¶ 18, 123 N.M. 200, 936 P.2d 882; *accord United States v. Workman*, 80 F.3d 688, 694 (2d Cir.1996); *United States v. Van Poyck*, 77 F.3d 285, 290–91 (9th Cir. 1996); *State v. Smith*, 117 Ohio App.3d 656, 691 N.E.2d 324, 327 (1997). Prison officials therefore did not violate Defendant's constitutional rights by monitoring and recording his June 14th telephone call.

### B. Sufficiency of the Evidence

{27} Defendant contends that if we conclude that his taped telephone conversations are inadmissible at trial, the evidence is insufficient to support his conviction and he is therefore entitled to a dismissal of the charge against him rather than a new trial. *See State v. Jojola*, 2005–NMCA–119, ¶ 2, 138 N.M. 459, 122 P.3d 43 (concluding that "because Defendant would be entitled to a dismissal of the charges on remand if the evidence adduced at trial was insufficient to support [the] conviction, we are required to address Defendant's argument that there was not sufficient evidence" to support the

verdict), *aff'd*, 2006–NMSC–048, 140 N.M. 660, 146 P.3d 305. We conclude that there was sufficient evidence to support Defendant's conviction.

{28} When reviewing a challenge to the sufficiency of the evidence, we must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "A reviewing court must view the evidence in the light most favorable to the state, resolving all conflicts therein and indulging all permissible inferences therefrom in favor of the verdict." *Id.* "In making this determination, we consider the illegally admitted evidence as well as the properly admitted evidence." *State v. Hernandez*, 1997–NMCA–006, ¶ 38, 122 N.M. 809, 932 P.2d 499.

{29} To convict Defendant of trafficking a controlled substance, the jury had to find beyond a reasonable doubt that:

1. The defendant had cocaine in his possession;

2. The defendant knew it was cocaine or believed it to be cocaine;

3. The defendant intended to transfer it to another;

4. This happened in New Mexico on or about the 9th day of June, 2004.

*See* UJI 14–3111 NMRA. On appeal, Defendant appears to contest only the possession element of the conviction against him. Under a theory of constructive possession, even if the drugs were not on Defendant's person, he can be considered in possession of the drugs if he knew where the drugs were located and if he exercised control over them. UJI 14–3130 NMRA; *see State v. Bankert*, 117 N.M. 614, 620, 875 P.2d 370, 376 (1994). However, "[a] person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not, by itself, possession." UJI 14–3130.

{30} Defendant contends that the only evidence presented at trial connecting him to the cocaine were his two telephone calls made from prison. We note, however, that even if both telephone calls were illegally admitted at trial, we would still consider the substance of those tapes in determining the sufficiency of the evidence for the purpose of whether a new trial is appropriate upon remand. *See Hernandez*, 1997–NMCA–006, ¶ 38, 122 N.M. 809, 932 P.2d 499; *State v. Post*, 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App.1989). Moreover, we observe that even in the absence of the taped telephone conversations, sufficient evidence exists to support Defendant's conviction.

{31} Defendant fled from the police and removed an easily identifiable article of clothing, his Lakers jersey, as he ran. *See State v. Morales*, 2002–NMCA–052, ¶ 31, 132 N.M. 146, 45 P.3d 406 (observing that a defendant's fleeing from the police to avoid capture supported an inference that the defendant was culpable). Defendant then hid in an apartment courtyard behind an abandoned refrigerator. *See State v. Stefani*, 2006–NMCA–073, ¶ 39, 139 N.M. 719, 137 P.3d 659 (concluding that the jury could interpret the defendant's hiding from police as evidence of guilt). Additionally, although mere proximity to the cocaine is not sufficient in itself to constitute possession, the location of the cocaine in the present case gives "rise to a certain inference of knowledge." *Morales*, 2002–NMCA–052, ¶ 32, 132 N.M. 146, 45 P.3d 406. The cocaine was stashed directly under the abandoned refrigerator that Defendant was hiding behind and near where Defendant had discarded his Lakers jersey. As such, although Defendant asserted at trial that he had no knowledge of the cocaine, the jury was free to discard his version of the facts. *See Sutphin*, 107 N.M. at 131, 753 P.2d at 1319. Defendant's two telephone calls from prison further support the inference that Defendant knew of the location of the cocaine and that he exercised control over the drugs. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence to support a finding that Defendant had constructive possession of the cocaine. We conclude that sufficient evidence supported Defendant's conviction and that a new trial upon remand is therefore appropriate. As previously discussed, how-

ever, upon retrial, the tape of Defendant's June 9th telephone conversation is not admissible, but the tape of his June 14th telephone conversation is admissible.

**CONCLUSION**

{32} Defendant's conviction is reversed, and we remand for a new trial.

{33} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.