This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                 **NO. 27,758**

**LISA MELENDEZ,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mike Murphy, District Judge**

Gary King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant appeals her conviction of violating NMSA 1978, Section 66-8-102(B) (2004) (amended 2008), driving while under the influence of drugs. Defendant contends that the arresting officer at the DWI checkpoint lacked reasonable suspicion to refer her to a secondary inspection area for further investigation. Further, Defendant challenges the sufficiency of the evidence underlying her conviction for violating Section 66-8-102(B) and argues that the district court abused its discretion in requiring her to install an ignition interlock device on her vehicle. We affirm on all grounds.

**BACKGROUND**

On December 1, 2006, at approximately 2:00 a.m., Defendant drove up to a sobriety checkpoint on Interstate 10 near Anthony, New Mexico. After Defendant brought her vehicle to a stop, New Mexico State Police officer Daniel Bardé approached and stood beside her driver's side door. The windows on Defendant's vehicle were rolled up as it was a cold night. Despite the fact that Officer Bardé was wearing reflective safety equipment, Defendant did not appear to immediately see him. Officer Bardé waited five seconds and knocked on the driver's window of Defendant's vehicle. When Defendant lowered her window, Officer Bardé informed Defendant that he was a New Mexico State Police officer and that she had arrived at a DWI sobriety checkpoint.

At that point, Officer Bardé believed that Defendant might be impaired because Defendant did not look at him while he addressed her, instead she looked straight ahead, and he detected the smell of alcohol emanating from inside the vehicle. Officer Bardé asked Defendant if she had consumed any alcohol that evening. Defendant responded that she had not. Nevertheless, Officer Bardé instructed Defendant to move her vehicle to the secondary inspection area for further investigation.

At the secondary inspection area, Officer Bardé asked Defendant for her license, registration, and insurance. Defendant initially provided only her license. After asking Defendant a second time for her registration and insurance, Defendant provided those documents. Throughout this interaction, Officer Bardé observed that Defendant's response time seemed delayed. Officer Bardé then asked Defendant to step out of her vehicle to perform the standard field sobriety tests. After Officer Bardé demonstrated the tests to Defendant, she told him that she had recently injured her right ankle. Officer Bardé testified at length about Defendant's performance on the standard field sobriety tests.

On direct examination, the State did not ask Officer Bardé any questions about Defendant's performance on the horizontal gaze nystagmus test, stating instead that "we'll skip the . . . horizontal gaze nystagmus." The State, however, elicited the following testimony from Officer Bardé about Defendant's performance on the remaining standard field sobriety tests. During the walk and turn test, Defendant

3

initiated the walk on the wrong foot, failed to take small steps, turned right rather than the left, and failed to "maintain a position" while being instructed by Officer Bardé how to perform the test. During the one-leg stand, Defendant could maintain her balance on one leg for only fifteen rather than thirty seconds, and she raised her arms for balance rather than keeping them at her side as instructed. Officer Bardé acknowledged that he disregarded Defendant's complaints about her ankle injury and thus neither made any attempt to accommodate her injury during the one-leg stand nor documented which leg Defendant stood on. Officer Bardé explained that he dismissed Defendant's claimed injury because he did not observe any swelling in either of Defendant's ankles, Defendant had informed him that she was an exotic dancer and was coming from work, and Defendant did not exhibit any sign of pain or discomfort.

After the standard field sobriety tests were completed, Officer Bardé concluded that Defendant was impaired because her performance on both the walk and turn and one-leg stand suggested as much. Officer Bardé again asked Defendant whether she had been drinking. This time, Defendant responded that she had consumed a vodka and tonic earlier in the evening and had also taken the antidepressants she was prescribed for her bi-polar condition. Officer Bardé then asked Defendant if she would submit to a voluntary breath analysis test. Defendant agreed. For reasons that are unclear, Defendant did not provide a breath sample sufficient to permit the breath analysis machine to produce a blood alcohol assessment. Officer Bardé believed that

4

Defendant was being purposefully noncompliant. Accordingly, Officer Bardé arrested Defendant and transported her to Memorial Medical Center in Las Cruces, New Mexico where blood samples could be drawn from Defendant.

Defendant's blood was subjected to a series of tests which were described and interpreted at Defendant's trial by Ginger Baker, a toxicologist and an expert witness for the State. When asked whether any trace of alcohol was found in Defendant's blood, Ms. Baker testified that no trace was found. When asked whether any drugs were found in Defendant's blood (and specifically which ones), Ms. Baker stated that she discovered the following drugs in Defendant's blood samples: benzoylecgonine (a metabolite of cocaine), cocaethylene (an active central nervous system depressant found in the body when cocaine and alcohol are consumed simultaneously), cocaine (an active central nervous system stimulant), and carboxy THC (the inactive metabolite of marijuana).

Ms. Baker testified that the inactive metabolite of THC would not have affected Defendant in any way. Furthermore, she was incapable of rendering any conclusion as to whether Defendant was impaired based on the mere fact that cocaethylene, benzoylecgonine, and cocaine were found in Defendant's blood. Ms. Baker explained that these chemicals do not cause uniformly predictable effects. Rather, they have distinct and potentially disparate effects on each unique person. The degree of impairment an individual with these chemicals in their blood might experience would

5

vary based on the manner in which a person's body might react to the chemicals and the manner in which the chemicals are metabolized by that person's body.

Despite finding that the mere presence of the chemicals in Defendant's blood did not prove Defendant was impaired, Ms. Baker concluded that Defendant was impaired to such a degree that she was incapable of safe driving. Ms. Baker explained her reasoning in the following manner: Generally, when she is unable to draw conclusions regarding the degree to which an individual might be impaired as a result of illicit drug use based solely on the results of toxicology tests, Ms. Baker considers the arresting officer's observations regarding impaired driving and the results of field sobriety tests. In Defendant's case, Ms. Baker reviewed the arrest/booking report, the DWI field report, Officer Bardé's statement of probable cause, and the criminal complaint. In those reports, Ms. Baker observed that Officer Bardé indicated that Defendant did not immediately respond to him when he initially approached her vehicle; Defendant failed to turn over her registration and insurance when asked to do so and needed to be reminded to provide those documents; and Defendant performed unsatisfactorily on both the walk and turn and one-leg stand field sobriety tests. Ms. Baker opined that the behaviors reported by Officer Bardé indicated signs of diminished cognitive functions, including diminished coordination, divided attention, and problems with judgment, perception, tracking, and reaction time. This type of behavior, according to Ms. Baker, is consistent with the type of behavior exhibited by

6

individuals under the influence of central nervous system depressants. Two active central nervous system depressants were identified in Defendant's blood: cocaine[1] and cocaethylene. According to Ms. Baker, coordination, attentiveness, sound judgment, clear perception, an ability to "track," and a capacity to react quickly are all essential attributes for safe driving. Based on the foregoing, it was Ms. Baker's opinion that Defendant was under the influence of drugs, was impaired by those drugs, and was impaired to such a degree that she was incapable of safely driving.

Officer Bardé and Ms. Baker were the only witnesses to testify at trial. At the end of the trial, the district court noted that under Section 66-8-102(B), Defendant could be convicted only if the court found, under the totality of the circumstances, that Defendant was under the influence of drugs and was impaired by those drugs to such a degree that she was incapable of safely driving a vehicle. The district court then summarized the totality of the circumstances in Defendant's case. The district court noted that Defendant "didn't do very well on the field sobriety test" and was "inattentive to instructions." The court did not regard Defendant's failure to immediately respond to Officer Bardé when he approached her vehicle as clear evidence of impairment. The district court indicated that it seemed equally plausible

---

[1] Ms. Baker acknowledged that cocaine is technically categorized as a central nervous system stimulant. However, Ms. Baker explained that cocaine has both stimulant and (as the body processes the drug) depressant effects.

that Defendant's delay in opening her vehicle window to address Officer Bardé could simply be an "attitude." Similarly, because Officer Bardé failed to consider Defendant's claimed ankle injury when he asked her to perform the one-leg stand and failed to record which leg she was asked to stand on during that test, the district court expressed uncertainty regarding what to make of the fact that Defendant failed that particular field sobriety test. Finally, the district court noted that there was no ethanol (alcohol) found in Defendant's blood. The blood tests did indicate, however, the presence of cocaethylene and carboxy THC. In conclusion, the district court found that the totality of the circumstances supported the following: Defendant was under the influence of a drug, this caused her to be impaired, and her impairment was to such a degree that she was incapable of safely operating a motor vehicle. Defendant was found guilty of violating Section 66-8-102(B).

After issuing his findings and verdict, the district court moved to sentencing. After hearing recommendations from the parties, the district court deferred Defendant's sentence and instead placed her on probation for one year. In addition, despite the fact that the district court had reservations about requiring an individual convicted of driving under the influence of drugs to install an ignition interlock device on their vehicle (this seemed "nonsensical" to the district court), the district court noted the mandatory nature of Section 66-8-102(N) and required Defendant to comply with the penalties of this provision as a condition of probation.

8

## DISCUSSION

Defendant raises three issues on appeal. First, pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct. App. 1985), Defendant contends that Officer Bardé lacked reasonable suspicion to order her to the secondary inspection area. Second, also pursuant to *Franklin* and *Boyer*, Defendant submits that there was insufficient evidence to support her conviction for violating Section 66-8-102(B). Finally, Defendant argues that the district court abused its discretion when the court ordered Defendant, as a condition of probation, to have an ignition interlock device installed on her vehicle. We address these arguments in turn.

## REASONABLE SUSPICION

The State does not dispute that reasonable suspicion is required to justify Officer Bardé's decision to order Defendant to the secondary inspection area. *See State v. Guzman*, 118 N.M. 113, 115, 879 P.2d 114, 116 (Ct. App. 1994) (reviewing whether the detention of the defendant at the secondary inspection area of a checkpoint was supported by reasonable suspicion). Whether there is reasonable suspicion to detain an individual is a mixed question of fact and law. *State v. Robbs*, 2006-NMCA-061, ¶¶ 8-9, 139 N.M. 569, 136 P.3d 570. We review the district court's factual determinations for substantial evidence and review the application of those

factual determinations to the law de novo. *State v. Templeton*, 2007-NMCA-108, ¶ 8, 142 N.M. 369, 165 P.3d 1145.

The district court appears to have found that Officer Bardé possessed reasonable suspicion to order Defendant to the secondary inspection area but provided no specific findings for that conclusion. We are persuaded that the record supports the district court's finding. Officer Bardé offered three reasons for his decision to order Defendant to the secondary inspection area: (1) Defendant appeared not to see him when he initially approached her vehicle despite the fact that he was wearing reflective safety equipment; (2) Defendant avoided eye contact with him when she eventually opened her window to address him; and (3) when Defendant opened her window, he smelled the odor of alcohol emanating from Defendant's vehicle. These three reasons support the district court's finding that reasonable suspicion existed to justify Officer Bardé's decision to refer Defendant to the secondary inspection area. *See State v. Walters*, 1997-NMCA-013, ¶¶ 6, 26, 123 N.M. 88, 934 P.2d 282 (holding that once an officer "spoke to [the d]efendant and detected the odor of alcohol, he had reasonable suspicion to investigate further[,]" which included the administration of field sobriety tests).

Defendant argues that the sole basis for Officer Bardé's decision to refer her to the secondary inspection area was his detection of the odor of alcohol, and this was insufficient for a finding of reasonable suspicion. Defendant's assertion is not

supported by the record. As we have noted above, Officer Bardé gave three reasons for ordering Defendant to the secondary inspection area. Even if it was the sole basis, however, *Walters* makes clear that detection of the odor of alcohol alone can lead to reasonable suspicion to investigate further. *Id.* We are equally unpersuaded by Defendant's contention that because the blood tests later revealed that her blood alcohol concentration was zero, Officer Bardé's claim that he smelled alcohol emanating from Defendant's vehicle was insufficient to establish reasonable suspicion to order her to the secondary inspection area. First, we may reject this contention because Defendant cited no authority for this proposition. *See State v. Ryan*, 2006-NMCA-044, ¶ 3, 139 N.M. 354, 132 P.3d 1040 (holding that arguments not supported by authority will not be considered by the court). Second, we understand Defendant to be arguing that Officer Bardé's testimony that he smelled alcohol was untrue given the results of the blood tests. However, Defendant admitted to Officer Bardé that she consumed an alcoholic beverage roughly an hour before arriving at the checkpoint, and she had cocaethylene (which is produced when alcohol and cocaine are consumed simultaneously) in her blood. The totality of the circumstances known to Officer Bardé was sufficient for him to have reasonable suspicion that Defendant was driving under the influence and to order Defendant to the second stop for further investigation.

**SUFFICIENCY OF EVIDENCE**

Defendant's second argument on appeal is her assertion that there was insufficient evidence to convict her of violating Section 66-8-102(B). "Whether there is sufficient evidence to support a conviction is a question of law which we review de novo." *State v. Neal*, 2008-NMCA-008, ¶ 20, 143 N.M. 341, 176 P.3d 330. "In reviewing a claim of insufficient evidence, we must determine whether there is substantial evidence of either a direct or a circumstantial nature to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to conviction." *Id.* ¶ 19. "[W]e do not reweigh the evidence or substitute our judgment for that of the factfinder." *Id.* ¶ 20 (alteration omitted) (internal quotation marks and citation omitted). "We review the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences to uphold a verdict of conviction." *Id.* ¶ 19. "Substantial evidence is that which is acceptable to a reasonable mind as adequate support for a conclusion." *Id.* "The test is not whether substantial evidence would support an acquittal, but whether substantial evidence supports the verdict actually rendered." *Id.*

Defendant was convicted of violating Section 66-8-102(B) which provides: "It is unlawful for a person who is under the influence of any drug to a degree that renders him incapable of safely driving a vehicle to drive a vehicle within this state." Defendant argues that the evidence submitted by the State was insufficient to convict her under Section 66-8-102(B) for the following reasons: (1) the field sobriety tests

were irrelevant to any conclusions regarding impairment because they measure blood alcohol concentrations and Defendant's blood contained no alcohol; and (2) the State's toxicology expert could not definitively state that the drugs in Defendant's system caused any impairment. We are not persuaded.

We note at the outset that Defendant does not challenge either the statute under which Defendant was convicted or the qualifications of the State's toxicology expert. Further, Defendant cites no authority in support of her first argument—that any conclusions about impairment based on the field sobriety tests are irrelevant because Defendant's blood contained no alcohol. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an appellate court will not consider an issue if no authority is cited in support of the issue). We turn then to Defendant's argument that there was insufficient evidence to support a finding that the drugs in her system caused any impairment in violation of Section 66-8-102(B).

The plain language of Section 66-8-102(B) and the corresponding UJI contain nearly identical language. Thus, in order to convict Defendant of violating Section 66-8-102(B), the State had to prove beyond a reasonable doubt that:

1. The defendant operated a motor vehicle;
2. At that time, the defendant was under the influence of drugs to such a degree that the defendant was incapable of safely driving a vehicle;
3. This happened in New Mexico[.]

UJI 14-4502 NMRA. There is no question that elements one and three are clear and that Defendant committed those portions of the offense; she operated a motor vehicle in New Mexico. We must determine then whether substantial evidence existed to establish that Defendant was under the influence of drugs to such a degree that she was incapable of safely driving a vehicle. Defendant does not challenge Ms. Baker's testimony that drugs—carboxy THC (a metabolite of marijuana), cocaine, benzoylecgonine (a metabolite of cocaine), and cocaethylene (which is found in the body when cocaine and alcohol are consumed simultaneously)—were found in Defendant's blood. Having determined that Defendant was under the influence of drugs, we turn to whether Defendant was impaired to a degree that she could not operate her vehicle safely.

Ms. Baker testified that although cocaethylene and carboxy THC were found in Defendant's blood samples, this alone did not demonstrate that Defendant was impaired. Ms. Baker also testified that the metabolite carboxy THC would have had no effect on Defendant. Accordingly, the presence of carboxy THC in Defendant's blood could not be sufficient evidence by itself that Defendant was under the influence of drugs such that she was incapable of safe driving. Further, Ms. Baker testified that it was impossible for her to reach any conclusion concerning whether Defendant was impaired in any way based solely on the results of the blood samples. Thus, Defendant argues that the presence of drugs in Defendant's blood alone is an

14

insufficient basis upon which the district court could have based its verdict. Although Ms. Baker's testimony in this regard may appear problematic, we are nevertheless persuaded that substantial evidence was presented at Defendant's trial to support the verdict.

As we have previously noted, upon reviewing the behavioral evidence reported by Officer Bardé in conjunction with the results of her toxicology tests, Ms. Baker concluded that Defendant was under the influence of drugs, was impaired by those drugs, and was impaired to such a degree that she was incapable of safe driving. Ms. Baker testified that two central nervous system depressants (cocaine and cocaethylene) were found in Defendant's blood. Ms. Baker further testified that, given Officer Bardé's observations of Defendant's behavior, Defendant was under the influence of these central nervous system depressants. She opined that central nervous system depressants diminish cognitive functions, including diminished coordination, divided attention, and problems with judgment, perception, tracking, and reaction time. Finally, and most critically, she testified that the cognitive functions central nervous system depressants diminish are those specifically necessary for safe driving. Defendant's responses, observed behaviors, and performance on the field sobriety tests were, according to Ms. Baker, "consistent with somebody on a central nervous system depressant." We are satisfied that Ms. Baker's uncontroverted testimony coupled with that of Officer Bardé was sufficient for the district court to find beyond

15

a reasonable doubt that Defendant was under the influence of drugs to such a degree that she was incapable of safe driving.

**CONDITION OF PROBATION**

Defendant's final argument on appeal is that the district court abused its discretion by requiring her, as a condition of probation, to comply with Subsection N of Section 66-8-102. Section 66-8-102(N) provides: "Upon a conviction pursuant to this section, an offender shall be required to obtain an ignition interlock license and have an ignition interlock device installed and operating on all motor vehicles driven by the offender, pursuant to rules adopted by the bureau." Defendant argues that because she was convicted of driving under the influence of drugs, requiring her to install an ignition interlock device on her vehicle bears no relation to the offense she committed and would not necessarily deter her from driving under the influence of drugs in the future. *See State v. Williams*, 2006-NMCA-092, ¶ 3, 140 N.M. 194, 141 P.3d 538 (holding that probationary conditions will be set aside only if they "(1) have no reasonable relationship to the offense for which [the] defendant was convicted, (2) relate to activity which is not itself criminal in nature *and* (3) require or forbid conduct which is not reasonably related to deterring future criminality" (alteration in original) (internal quotation marks and citation omitted)). We reject this argument.

The plain language of Section 66-8-102(N) denotes that it is a mandatory provision and applies to all persons convicted under any subsection of 66-8-102.

16

Accordingly, it was not within the district court's discretion to decide whether or not this provision was applicable to Defendant. Defendant's citation to the standards articulated in *Williams* are thus unavailing. Those standards are pertinent only when we are asked to review whether a district court's exercise of discretion in setting a condition of probation was an abuse of that discretion. As noted, Section 66-8-102(N) is mandatory, and the district court had no discretion in deciding whether to enforce the provision.

We are equally unpersuaded by Defendant's assertion, which the district court seemed to accept, that it is illogical or nonsensical to require individuals convicted of driving under the influence of drugs to submit to the requirements of Section 66-8-102(N). Although the Legislature may well have concluded that individuals convicted of driving under the influence of drugs may also have a proclivity for driving under the influence of alcohol, we need not reach that argument here. Defendant in this case only challenges the district court's alleged discretionary decision to apply the penalties set forth in that statute as a condition to her probation. As the district court was mandated to apply the penalties set forth in the statute and had no discretion in that regard, Defendant's argument fails.

**CONCLUSION**

For the foregoing reasons, we affirm.

**IT IS SO ORDERED.**

17

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**MICHAEL E. VIGIL, Judge**

18