# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>December 28, 2018</u>

**NO. A-1-CA-36014**

**LSF9 MASTER PARTICIPATION TRUST,**

      Plaintiff-Appellant,

**v.**

**JOANN SANCHEZ and FRANK F. SANCHEZ,**

      Defendants-Appellees,

and

**WELLS FARGO BANK, N.A. BY MERGER WITH WELLS FARGO FINANCIAL BANK, and CANVASBACK FINANCIAL SERVICES, LLC,**

      Defendants.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Mary W. Rosner, District Judge**

McCarthy & Holthus, LLP
Joshua T. Chappell
Karen Weaver
Albuquerque, NM

for Appellant

Eric Ortiz & Associates
Eric N. Ortiz
Albuquerque, NM

for Appellees

**OPINION**

**VIGIL, Judge.**

{1}     Wells Fargo (Bank) appealed from the district court's order dismissing its foreclosure action against Joann and Frank Sanchez (Homeowners) with prejudice. During the pendency of the appeal, and after briefing was completed, Bank filed a motion to substitute LSF9 Master Participation Trust (LSF9) as appellant in the case, which we granted. LSF9 raised no new claims after our order of substitution, and as such, we address the arguments raised by Bank. Bank made two arguments on appeal: (1) the district court erred in dismissing its entire foreclosure claim as barred by the applicable statute of limitations, NMSA 1978, § 37-1-3(A) (2015); and (2) the district court abused its discretion in denying Bank leave to amend its complaint to plead the tolling effect on the statute of limitations of Homeowners' three bankruptcy cases. We reverse.

**BACKGROUND**

{2}     The material facts are not in dispute. On October 30, 2007, Homeowners executed a note and mortgage to secure a $203,669.41 loan. The mortgage was secured by real property located in Las Cruces, New Mexico. The note and mortgage provided for periodic payments in the amount of $1,712.55 to be paid on the fourth day of every month beginning on December 4, 2007. The note and mortgage also contained acceleration clauses, providing that in the event of default, Bank "may require [Homeowners] to pay immediately the full amount of

[p]rincipal which has not been paid and all the interest that [Homeowners] owe on that amount."

{3}     Homeowner defaulted on the loan on October 4, 2008. Bank filed a foreclosure action against Homeowners on October 7, 2009. In this action, Bank asserted that it was exercising its option under the note to accelerate and declare immediately payable and due the full amount of principal and all interest still owed under the note.

{4}     On June 21, 2011, during the pendency of the first foreclosure action, Homeowners filed for Chapter 13 bankruptcy, which was dismissed without prejudice on August 18, 2011, for failure to file information. Homeowners filed a second bankruptcy under Chapter 13 on November 17, 2011, which was dismissed for failure to make plan payments on June 15, 2012. During the pendency of the second bankruptcy, Bank voluntarily dismissed the first foreclosure action on March 20, 2012. Homeowners thereafter filed a third bankruptcy under Chapter 7 on August 21, 2012, which resulted in a discharge order entered on January 23, 2013.

{5}     On February 22, 2016, Bank filed its second, and the currently operative, foreclosure action against Homeowners stemming from Homeowners' October 4, 2008 default. Bank alleged in the complaint that its claim was for the accelerated unpaid balance and that it had sent Homeowners a notice of default and a demand

letter on August 28, 2015, requesting Homeowners cure of the default. Although not specifically alleging Homeowners' three bankruptcy cases, Bank only sought in rem relief in the complaint. However, concurrent with the complaint, Bank filed a notice of bankruptcy discharge and disclaimer of deficiency that referenced Homeowners' successful Chapter 7 bankruptcy and included a copy of the order of discharge as an exhibit.

{6} Homeowners filed a motion to dismiss pursuant to Rule 1-012(B)(1), (6) NMRA. Homeowners argued that the statute of limitations for a written contract of six years pursuant to Section 37-1-3(A) applied, and because more than six years had elapsed between their default on October 4, 2008, and Bank's filing of the second foreclosure action on February 22, 2016, Bank's foreclosure claim was barred.

{7} Bank responded that pursuant to *Welty v. Western Bank of Las Cruces*, 1987-NMSC-066, 106 N.M. 126, 740 P.2d 120, new and separate breaches of the note and mortgage occurred between Homeowners' original default on October 4, 2008 and October 7, 2009, when Bank accelerated the loan—and each separate breach of the note and mortgage accrued a new six-year period of limitation for each missed payment. Bank therefore argued that while its claim for some of Homeowners' oldest missed payments may have been barred by Section 37-1-3, the majority of Homeowners' missed payments, including the accelerated balance

3

as of October 7, 2009, fell within the statute of limitations in light of the tolling of the limitations period because of Homeowners' three bankruptcy cases pursuant to 11 U.S.C. § 362 (2012) (stating the circumstances in which the filing of a bankruptcy petition triggers an automatic stay of other proceedings involving the property of a debtor or bankruptcy estate), and NMSA 1978, Section 37-1-12 (1880) (governing the effect of a stay on the computation of statutes of limitations).

{8}    After a hearing, the district court dismissed Bank's foreclosure complaint with prejudice. The district court ruled that it would not consider the tolling effect of Homeowners' bankruptcy filings and denied Bank's request to amend its complaint to plead facts concerning Homeowners' bankruptcies and their tolling effect on the limitation period for Bank's foreclosure claim. The district court did not provide reasoning explaining why it would not grant Bank leave to amend its complaint, but apparently agreed with Homeowners' argument that "[t]here has been nothing that prevented [Bank] from filing a motion to amend" between the filing of the complaint and litigation of Homeowners' motion to dismiss, and that "if [Bank] wished to remedy the problem by amending the complaint, they had the opportunity to do that and they failed to do so."

{9}    Bank appeals from the order of dismissal with prejudice.

## DISCUSSION

### I.       Standard of Review

{10}      "When facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts." *Haas Enters. v. Davis*, 2003-NMCA-143, ¶ 9, 134 N.M. 675, 82 P.3d 42. "We review questions of law de novo." *Id.* Further, insofar as our analysis involves statutory interpretation, our review is de novo. *See Wolinsky v. N.M. Corr. Dep't*, 2018-NMCA-071, ¶ 3, 429 P.3d 991, *cert. denied*, 2018-NMCERT-___ (No. S-1-SC-37287, Oct. 26, 2018).

### II.      Dismissal of Bank's Foreclosure Claim Was Precluded by Section 37-1-3

{11}      Bank argues that the district court erred in dismissing its entire foreclosure claim with prejudice as barred by the statute of limitations, Section 37-1-3(A) (providing that "[a]ctions founded upon any bond, promissory note, bill of exchange or other contract in writing shall be brought within six years"). Bank concedes that certain of Homeowners' missed payments due prior to Bank's October 7, 2009 acceleration of the balance remaining under the note may have been barred when Bank filed the second foreclosure action on February 22, 2016. However, Bank asserts that the limitation period had not run on the accelerated balance as of October 7, 2009, considering the import of *Welty* and the tolling of

the limitation period due to Homeowners' three bankruptcy cases and Bank's 2015 demand letter. We agree.

**A.      Homeowners' Missed Payments Prior to Bank's October 7, 2009 Acceleration**

{12}    Generally, "[i]n a breach of contract action, the statute of limitations begins to run from the time of the breach." *Welty*, 1987-NMSC-066, ¶ 8. In the context of an installment contract, like the note in this case, *see Maffett v. Emmons*, 1948-NMSC-012, ¶¶ 1, 6, 52 N.M. 115, 192 P.2d 557 (construing a note promising periodic payments as an installment contract), our Supreme Court held in *Welty* that

> under contract obligations payable by installments, the statute [of limitations defined in Section 37-1-3(A)] would have begun to run only with respect to each installment when due. The statute would have begun to run with respect to the whole indebtedness only from the date of an exercise of the option to declare the whole indebtedness due.

*Welty*, 1987-NMSC-066, ¶ 9.

{13}    Under the foregoing authority, we conclude that the payments due between October 4, 2008 and October 4, 2009, prior to Bank's October 7, 2009 acceleration of the balance due under the note, were barred by the statute of limitations at the time of Bank's filing of the second foreclosure action. Pursuant to the note, which provided that payments were due on the fourth day of every month, the last payment Homeowners failed to make prior to the October 7, 2009 acceleration was

6

the payment scheduled for October 4, 2009. Applying *Welty*, the limitation period for this missed payment accrued on October 4, 2009, and ran six years later, on October 4, 2015—142 days before Bank filed the second foreclosure action on February 22, 2016. *See* 1987-NMSC-066, ¶ 9. It follows that the statute of limitations for each payment missed by Homeowners prior to the October 4, 2009 payment also ran prior to Bank's filing of the second foreclosure action. *Id.*

**B.     Homeowners' Obligation Under the Note After Bank's October 7, 2009 Acceleration**

{14}     The fundamental dispute in this case concerns the tolling effect of Homeowners' three bankruptcy filings and Bank's 2015 demand letter on the running statute of limitations for Bank's claim for the remaining amount due under the note after Bank's October 7, 2009 acceleration.

{15}     Bank argues that mandatory stays on its foreclosure claim were triggered by Homeowners' bankruptcy filings, which tolled the statute of limitations for the periods of time during which those cases were pending pursuant to 11 U.S.C. § 362(a) and Section 37-1-12. *See* § 37-1-12 (providing that "[w]hen the commencement of any action shall be stayed or prevented by injunction order or other lawful proceeding, the time such injunction order or proceeding shall continue in force shall not be counted in computing the period of limitation"). Further, relying on our Supreme Court's statement in *Welty*, 1987-NMSC-066, ¶ 9, that where a contract prohibits commencement of a suit for default within thirty

7

days of demand, the statute of limitations is tolled during that period, Bank asserts that under the terms of the note, following service of the demand letter to Homeowners on August 28, 2015, the limitation period was tolled for an additional thirty days. Based on these asserted periods of tolling of the limitation period for Bank's claim for the accelerated balance as of October 7, 2009, Bank contends that the second foreclosure action was timely filed within the six-year limitation period.

{16}	Homeowners respond that although generally "the filing of a bankruptcy petition operates as a stay of the commencement or continuation of judicial actions such as the foreclosures at issue in this case[,]" here, § 362(c)(3) and 11 U.S.C. § 108(c) (2012) operate as an exception or limitation to the general rule stated in § 362(a). Specifically, under these sections of the Bankruptcy Code, Homeowners argue that Bank is not entitled to toll the time of Homeowners' bankruptcies. It follows, Homeowners assert, Bank's second foreclosure action was filed after the statute of limitations had run.

{17}	The commencement of a case under the Bankruptcy Code "creates an estate. Such estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2016). The filing of a petition under the bankruptcy code "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" § 362(a)(3).

8

{18} Pursuant to § 362(c)(3)(A), "if a single or joint case is filed by or against a *debtor* is filed by or against a *debtor* who is an individual in a case under Chapter 7, 11, or 13, and if a single or joint case of the *debtor* was pending within the preceding 1-year period but was dismissed . . . the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt . . . shall terminate with respect to the *debtor* on the 30th day after the filing of the later case." (Emphases added.) Similarly, pursuant to § 108(c):

> if applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the *debtor*, or against [a codebtor] . . . protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of--
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the
>
> case may be, with respect to such claim.

(Emphasis added.)

{19} While Homeowners are correct to note that § 362(c)(3) and § 108(c) can operate as exceptions or limitations to the mandatory stays described in § 362(a) in actions filed by or against the *debtor*, Homeowners fail to recognize the significance, as Bank argues in its reply brief, of the material distinction drawn in

9

bankruptcy law between actions against the *debtor* and actions against the *estate*, as described in § 541, in the context of § 362(a). Bank argues that the precedent of "[a] majority of federal courts, including the Tenth Circuit's Bankruptcy Appellate Panel[,]" which would have applied to Homeowners' bankruptcy case that was brought in New Mexico, holds that termination of the automatic stay occurs, pursuant to § 362(c)(3)(A), only with regard to the *debtor*—not the *estate*. In support of this argument, Bank cites *In re Holcomb*, 380 B.R. 813 (B.A.P. 10th Cir. 2008).

{20}     In *Holcomb*, the Tenth Circuit Bankruptcy Appellate Panel held that:

> a majority of courts have [concluded] . . . the automatic stay terminates under § 362(c)(3)(A) only with respect to the debtor and the debtor's property but not as to the property of the estate. These courts reason that if Congress meant to terminate the stay in its entirety, it would have done so in plain language[.] . . . On this basis, we conclude that the language of § 362(c)(3)(A) terminates the stay only as to the debtor and the debtor's property.

380 B.R. at 815-16 (citations omitted). Accordingly, following the Tenth Circuit precedent in *Holcomb*, we conclude that § 362(c)(3) and § 108(c), each of which apply only to actions brought by or against the *debtor*, do not apply to this case in which Bank sought only in rem relief against the property of Homeowners' bankruptcy estate. *See Fed. Nat'l Mortg. Ass'n v. Chiulli*, 2018-NMCA-054, ¶ 2, 425 P.3d 739 (recognizing that in the event of a default on a promissory note, the

mortgagee has an independent remedy to sue on the note or in rem against the mortgaged property to satisfy the debt).

{21}    Concluding § 362(c)(3) and 108(c) do not apply to this case, we turn to Bank's argument that, pursuant to Section 37-1-12, the statute of limitations for its claim for the accelerated balance as of October 7, 2009, was tolled during the periods in which Homeowners' three bankruptcies were pending in federal bankruptcy court as a result of § 362(a) automatic stays.

{22}    Homeowners' respond, in pertinent part, that "[e]ven if this Court reads Section 37-1-12 as tolling the time in which the bankruptcy stay was in effect, . . . the Bank may not toll the 58 days of the first bankruptcy because the [f]irst [f]oreclosure [l]awsuit, which was filed prior to the first bankruptcy, was pending during the first bankruptcy." In support, Homeowners' cite *Butler v. Deutsche Morgan Grenfell, Inc.*, 2006-NMCA-084, ¶ 18, 140 N.M. 111, 140 P.3d 532 for the proposition that "Section 37-1-12 does not apply unless the 'commencement' of an action is stayed or prevented[.]' "

{23}    We assume without deciding that Homeowners argument concerning the applicability of Section 37-1-12 to the automatic stay resulting from their first bankruptcy is correct. Furthermore, we also assume that this rationale also applies to the approximate four-month period in which both Homeowners' second bankruptcy (filed on November 17, 2011) and Bank's first foreclosure actions were

11

concurrently pending in federal bankruptcy and New Mexico state district court prior to Bank's voluntary dismissal of the first foreclosure action on March 20, 2012. However, notwithstanding these assumptions, we conclude sufficient tolling of the limitation period as a result of the stays resulting from Homeowners' second bankruptcy (which remained pending after Bank's voluntary dismissal of the first foreclosure action) and third bankruptcy cases operated to bring Bank's filing of the second foreclosure action within the six-year limitation period as contemplated by Section 37-1-12.

{24}     First, under the undisputed facts, 88 days passed between Bank's March 20, 2012 voluntary dismissal of the first foreclosure action and the dismissal of Homeowners' second bankruptcy case on June 15, 2012. Second, 156 days passed between Homeowners' filing of the third bankruptcy case on August 21, 2012 and the bankruptcy court's January 23, 2013 discharge order. It follows, consistent with Section 37-1-12, that the automatic stays pursuant to § 362(a), resulting from Homeowners' second and third bankruptcies, operated to toll the limitation period for Bank's claim for the accelerated balance as of October 7, 2009, for a total of 244 days. The six-year limitation period for the accelerated balance was originally scheduled to run on October 7, 2015; however, based on the 244-day tolling of the limitation period, we conclude that limitation period was pushed to run on May 27, 2016. Therefore, when Bank filed the second foreclosure action on February 22,

12

2016, 107 days remained under the statute of limitations for Bank to refile its action for the accelerated balance. Accordingly, we conclude that the district court erred in dismissing Bank's entire foreclosure claim as precluded by the statute of limitations.

{25}    In so concluding, we briefly address the issue raised by Bank concerning the tolling effect of Bank's 2015 demand letter, which Bank argues should apply to toll the limitation period for an additional thirty days on grounds that Homeowners failed to respond to the argument, constituting a concession of the issue. *See, e.g.*, *State v. Templeton*, 2007-NMCA-108, ¶ 22, 142 N.M. 369, 165 P.3d 1145 (stating that the failure to respond to contentions made in an answer brief is "a concession on the matter"). Based on our conclusion above that Bank's claim for the accelerated balance as of October 7, 2009 was filed within the statute of limitations, determination of this issue is unnecessary. Similarly, based on our conclusion above, we do not address Bank's second argument—that the district court abused its discretion in denying Bank leave to amend the second foreclosure complaint to plead Homeowners' three bankruptcy cases.

**CONCLUSION**

{26}    The district court's order of dismissal is reversed. We remand for further proceedings consistent with this opinion.

{27}    **IT IS SO ORDERED.**

13

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____

**M. MONICA ZAMORA, Judge**


_____

**JULIE J. VARGAS, Judge**

14