This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38476**

**WELLS FARGO BANK, N.A., not in its individual capacity but solely as Trustee for the RMAC REMIC TRUST, SERIES 2008-1,**

Plaintiff-Appellant,

v.

**JOSEPH C. DUDA,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Raymond Z. Ortiz, District Judge**

McCarthy & Holthus, LLP
Jason Bousliman
Albuquerque, NM

for Appellant

Walcott, Henry & Winston, P.C.
Donald A. Walcott
Santa Fe, NM

for Appellee

### MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Wells Fargo, as trustee for the RMAC Remic Trust, (Bank) appeals dismissal of its foreclosure action in the district court. On appeal Bank argues that the district court erred in finding that Bank's foreclosure was barred by the statute of limitations provided in NMSA 1978, Section 55-3-118 (1992). Specifically, Bank asserts that (1) pursuant to NMSA 1978, Section 37-1-16 (1957), Joseph Duda's (Borrower) forbearance payments

and affidavit revived the statute of limitations; (2) Bank's 2009 foreclosure suit tolled the statute of limitations; and (3) Bank's voluntary dismissal of the 2009 foreclosure suit decelerated the loan and reset the statute of limitations. We conclude that Borrower's subsequent payments revived Bank's cause of action and therefore reverse.

## BACKGROUND

**{2}**     This case involves two separate foreclosure actions between Bank and Borrower founded upon the same promissory note (the Note) and mortgage (Mortgage). The first suit was filed in 2009 and later dismissed without prejudice in 2015. Bank filed a new complaint in 2016 that was dismissed by the district court in 2019. For clarity we address each foreclosure suit separately.

### 2009 Foreclosure Suit

**{3}**     In 2007 Borrower executed  the Note and Mortgage in favor of Mortgage Electronic Registration Systems, Inc. (MERS) as nominee for Equifirst Corporation. In 2009 MERS assigned its interest under the Note and Mortgage to Quantum Servicing Corporation (Quantum). Later that year Quantum filed a complaint for foreclosure under the Note and Mortgage but subsequently agreed to forbear from continuing with foreclosure while Borrower made payments pursuant to a written forbearance agreement (Agreement).[1] In 2011 Quantum assigned its interest under the Note and Mortgage to Bank, and Bank was substituted as the plaintiff in the foreclosure.

**{4}**     Bank filed a motion for summary judgment in late 2011 asserting that forbearance and loan modification negotiations were unsuccessful.[2] Borrower responded to Bank's motion and in an affidavit attached as an exhibit to his response, he attested to payments made pursuant to the Agreement as well as additional payments made after the Agreement term ended. The district court did not rule on Bank's motion and the case proceeded. In late 2013 Bank renewed its motion for summary judgment, and Borrower again responded. A hearing was set on Bank's motion but later vacated in early 2014. Bank moved to dismiss its claims without prejudice in 2015, and the district court dismissed the case on July 8, 2015, over Borrower's objection.[3]

### 2016 Foreclosure Suit

**{5}**     On March 23, 2016, Bank filed a new complaint for foreclosure. Borrower moved to dismiss Bank's complaint pursuant to Rule 1-012(B)(6) NMRA, arguing that Bank's claim was time barred by the statute of limitations established in Section 55-3-118(a).

---

1Quantum obtained a default judgment in the 2009 foreclosure before entering into the Agreement but the district court later set aside the default judgment and the foreclosure case proceeded.

2The district court administratively closed the case in February 2011, but reinstated the case in March 2011 upon motion by Quantum.

3In support of its motion to dismiss, Bank explained that it sought dismissal so that it could refile with the necessary showings required for standing pursuant to *Bank of N.Y. v. Romero*, 2014-NMSC-007, 320 P.3d 1.

Bank responded to Borrower's motion, arguing its voluntary dismissal reversed acceleration and, in the alternative, that partial payments made after the 2009 foreclosure suit was filed revived the cause of action. The district court held a hearing on Borrower's motion to dismiss after which it granted a partial dismissal. In relevant part, the district court's order found that pursuant to the statutes of limitations in Section 55-3-118(a) and NMSA 1978, Section 37-1-3 (2015), Bank's acceleration in the 2009 foreclosure began the limitation period. However, relying on out-of-state authority,[4] the district court also found that while defaults occurring prior to the 2009 case were barred, defaults occurring after voluntary dismissal remained viable despite prior acceleration.

{6}     Borrower filed a motion to reconsider asserting that out-of-state authority,[5] contrary to that relied on by the district court, supported full dismissal. Bank responded to Borrower's motion and the district court ordered additional briefing on the issue. The parties submitted supplemental briefing after which the district court dismissed Bank's suit in its entirety. In its order granting dismissal, the district court adopted the out-of-state authority cited by Borrower finding that Bank's voluntary dismissal of the 2009 case did not revoke acceleration and therefore the statute limitations to foreclose expired.

{7}     Following dismissal, Bank filed its own motion to reconsider, arguing again that the loan was decelerated. Bank also argued that the prior suit tolled the statute of limitations and in the alternative that the cause of action was revived pursuant to Section 37-1-16. Borrower responded to Bank's motion, and the district court held a hearing on the issue. On August 2, 2019, the district court issued an order on Bank's motion in which the court adopted the legal conclusions rendered in its order fully dismissing Bank's claim. The district court also found:

> 10.     The statute of limitations was not tolled during the pendency of the 2009 case[; and]

> 11.     This case involves the enforcement of a negotiable instrument that, pursuant to the [UCC], is governed by . . . [Section] 55-3-118(a). Therefore, pursuant to NMSA 1978 § 37-1-17 (1953), and case law interpreting this statute, the provisions of Chapter 37 do not apply

---

[4]In rendering its decision, the district court relied on *Singleton v. Greymar Assocs.*, 882 So. 2d 1004 (Fla. 2004) (per curiam) for its holding that "dismissal with prejudice in a mortgage foreclosure action does not necessarily bar[, on res judicata grounds,] a subsequent foreclosure action on the same mortgage [even if the mortgagee accelerated the note in the first suit.]" The district court also relied on cases applying *Singleton* including *U.S. Bank Nat'l Ass'n v. Bartram*, 140 So. 3d 1007 (Fla. Dist. Ct. App. 2014) (per curiam), and *Star Funding Sols., LLC v. Krondes*, 101 So. 3d 403 (Fla. Dist. Ct. App. 2012).

[5]In his motion to reconsider Borrower asked that the district court consider the ruling in *Fed. Nat'l Mortg. Ass'n v. Mebane*, 618 N.Y.S.2d 88 (N.Y. App. Div. 1994), requiring evidence of revoked acceleration. Borrower also directed the district court to subsequent New York case law applying *Mebane* including *Deutsche Bank Nat'l Tr. Co. Ams. v. Bernal*, 59 N.Y.D.3d 267 (N.Y. App. Div.), *abrogated on other grounds by Freedom Mortg. Corp. v. Engel*, 169 N.E.3d 912 (N.Y. 2021), distinguishing New York authority from Florida authority, and *BSD 265, LLC v. HSBC Bank*, No. 504656/16 slip op. (N.Y. Sup. Ct. June 27, 2017), which held that voluntary dismissal does not constitute revocation of acceleration.

to this case. Therefore, there was no [revival] under [Section] 37-1-16.

**{8}**     This appeal followed.

**DISCUSSION**

**{9}**     On appeal Bank argues in the alternative that (1) Borrower's forbearance payments and subsequent acknowledgement revived the statute of limitations, (2) the statute of limitations was tolled during the pendency of Bank's 2009 foreclosure suit, and (3) dismissal of the first foreclosure suit decelerated the loan and therefore the statute of limitations did not accrue. As explained below we conclude that Borrower's subsequent payments revived his debt and therefore the statute of limitations on Bank's foreclosure action did not expire before Bank filed its second suit. Consequently, because we reverse on Bank's revival arguments, we need not reach its tolling and deceleration arguments. *See Crist v. Town of Gallup*, 1947-NMSC-012, ¶ 14, 51 N.M. 286 183 P.2d 156 (holding that appellate court need not address questions unnecessary for a decision), *superseded by statute on other grounds as stated in Hoover v. City of Albuquerque*, 1954-NMSC-043, ¶ 5, 58 N.M. 250, 270 P.2d 386.

**Borrower's Payments Revived the Statute of Limitations**

**{10}**     Bank argues that Borrower's payments and acknowledgment of the debt made after acceleration in 2009 revived the statute of limitations. In response Borrower argues that the statute of limitations established in Section 55-3-118(a) supersedes the statute of limitations in Section 37-1-3, and therefore revival is not available for Bank's cause of action. Borrower also argues that even if revival is available, his payments did not revive the statute of limitations because Bank did not apply them to Borrower's principle or interest.

**{11}**     Each of Bank's arguments on appeal involves issues pertaining to the statute of limitations applicable to its foreclosure action. As explained below, the facts relevant to our analysis and ultimate holding regarding the statute of limitations are not in dispute. "When facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts." *LSF9 Master Participation Tr. v. Sanchez*, 2019-NMCA-055, ¶ 10, 450 P.3d 413 (internal quotation marks and citation omitted). "We review questions of law de novo." *Id.* (internal quotation marks and citation omitted). To the extent our analysis involves statutory interpretation, our review is de novo. *Id.* We begin our discussion with the district court's conclusion that revival was not applicable.

**{12}**     Bank argued in the district court that Borrower's payments pursuant to the Agreement as well as Borrower's acknowledgment of the debt in his affidavit revived the debt. Although the district court's original dismissal turns on a finding that Bank did not decelerate the loan upon voluntary dismissal, the district court's conclusion necessarily

implies that the debt was not revived. The district court confirmed this implication in its denial of Bank's motion to reconsider, which found in relevant part that:

> This case involves the enforcement of a negotiable instrument that, pursuant to the [UCC], is governed by [Section] 55-3-118(a). Therefore, pursuant to [Section] 37-1-17, and case law interpreting this statute, the provisions of Chapter 37 do not apply to this case. Therefore there was no [revival] under [Section] 37-1-16.

However, the district court's finding in this regard goes farther than simply finding that the debt was not revived. Instead the district court determined as a matter of law that Section 55-3-118(a) supersedes the statute of limitations in Section 37-1-3. As a result of this determination the district court also concluded that Section 37-1-17 precluded all provisions of Chapter 37 including revival under Section 37-1-16. We disagree.

**{13}** Our primary goal when interpreting statutory language is "to give effect to the Legislature's intent." *State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 (internal quotation marks and citation omitted). In doing so, we first look to the plain language of the statue and give "the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (internal quotation marks and citation omitted). "In addition to looking at the statute's plain language, we will consider its history and background and how the specific statute fits within the broader statutory scheme." *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. We "read the statute in its entirety and construe each part in connection with every other part to produce a harmonious whole." *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350.

**{14}** The district court's finding that revival is not applicable to Bank's cause of action rests on its interpretation of Section 37-1-17 which provides that:

> None of the provisions of this chapter shall apply to any action or suit which, by *any particular statute of this state*, is limited to be commenced within a *different time*, nor shall this chapter be construed to repeal any existing statute of the state which provides a limitation of any action; but in such cases the limitation shall be as provided by such statutes.

(Emphases added.) This Court recently addressed Section 37-1-17 in *Autovest, L.L.C. v. Agosto*, in which we held that revival was not applicable to a claim for a deficiency on a motor vehicle installment contract. 2021-NMCA-___, ¶¶ 10, 12-16, ___ P.3d ___ (Nos. A-1-CA-37459, A-1-CA-37486, A-1-CA-37969, Mar. 31, 2021).

**{15}** In *Agosto*, it was undisputed that the contract at issue was governed by the four year statute of limitations set out in Article 2 of New Mexico's UCC and that the complaints in question were filed more than four years after the actions accrued. *Id.* ¶ 10. Recognizing the unambiguous language of Section 37-1-17, we pointed out that

"[b]ecause the actions in the cases before [the Court] are governed by [the UCC], which is outside of [NMSA 1978,] Sections 37-1-1 to -19 [(1880, as amended through 2015)], [the UCC] is a particular statute of this state within the meaning of Section 37-1-17." *Agosto*, 2021-NMCA-___, ¶ 12 (internal quotation marks omitted). However, continuing our analysis under Section 37-1-17, we also noted that the UCC provided a different limitation period than Section 37-1-3 stating, "[the UCC] requires that an action for breach of a sales contract be commenced within four years, rather than the six-year period that is generally applicable to actions on written contracts under Section 37-1-3(A)." *Agosto*, 2021-NMCA-___, ¶ 12. Because of these distinctions we concluded, "by its plain terms, Section 37-1-17 renders the [revival] provisions of Section 37-1-16 inapplicable to a claim subject to the limitations period in [the UCC]. *Agosto*, 2021-NMCA-___, ¶ 12.

**{16}** In this case however, unlike *Agosto*, it is not undisputed that Section 55-3-118(a) governs mortgage foreclosure actions arising from default on a promissory note. Indeed, we are not aware of any authority, nor has Borrower cited any, that has previously applied Section 55-3-118(a) in these cases. Conversely, recent New Mexico case law has applied the statute of limitations provided in Section 37-1-3 to foreclosure actions. *See LSF9 Master Participation Tr.*, 2019-NMCA-055, ¶ 12 (holding actions on payments on a mortgage loan due prior to acceleration were time barred by Section 37-1-3's statute of limitations); *Lea Cnty. State Bank v. Markum Ranch P'ship*, 2015-NMCA-026, ¶ 11, 344 P.3d 1089 (stating that pursuant to Section 37-1-3(A) "[t]he applicable statute of limitations on actions involving promissory notes is six years"). Nevertheless, because these cases do not specifically address the district court's finding that Section 55-3-118(a) governs enforcement of a negotiable instrument and therefore—pursuant to Section 37-1-17—Chapter 37 does not apply, we consider this issue now.

**{17}** Section 37-1-3(A) provides in relevant part that "[a]ctions founded upon any bond, promissory note, bill of exchange or other contract in writing shall be brought within *six years*." (Emphasis added.) In turn, Section 55-3-118(a) provides, "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within *six years* after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date." (Emphasis added.) Notably, neither Section 37-1-3 nor Section 55-3-118 provides a definition distinguishing a "promissory note" from a "note payable at a definite time." However, our Supreme Court has construed notes secured by a mortgage as negotiable instruments defined by the UCC. *See Bank of N.Y.*, 2014-NMSC-007, ¶ 17 (citing NMSA 1978, Section 55-3-104(a), (b), (e) (1992) "identifying a promissory note as a negotiable instrument"). Thus, for the purpose of our analysis, these statutes ostensibly address the same form of instrument. In turn, like the statute at issue in *Agosto*, because Section 55-3-118 is outside of Chapter 37 it constitutes a "particular statute of this state" as contemplated in Section 37-1-17. Yet this designation satisfies only one consideration under Section 37-1-17.

**{18}** Section 37-1-17 also provides that such a "particular statute of this state" establishes a different limitation period. Indeed, in analyzing a similar issue under Section 37-1-17, our Supreme Court determined that the difference in limitation periods alone was "sufficient to thwart [the] plaintiff's attempt" to invoke the precluded statute. *Gathman-Matotan Architects & Planners, Inc. v. Dep't of Fin. & Admin.*, 1990-NMSC-013, ¶¶ 4-5, 109 N.M. 492, 787 P.2d 411. In this case, though, both Section 37-1-3 and Section 55-3-118 provide that the statute of limitations on actions to enforce a promissory note or a note payable at a definite time is six years. Thus while Section 55-3-118 is a "particular statute of this state" it does not establish a different limitation period than that provided in Section 37-1-3. Given this distinction and the fact that Section 37-1-17 unambiguously applies only to statutes that provide a different limitation period, we conclude that Section 37-1-17, by its plain terms, does not preclude application of the provisions in Chapter 37—including revival under Section 37-1-16—to causes of action founded on promissory notes. Consequently, we hold that the district court erred in concluding that revival was not applicable to Bank's claims. Having determined that revival is applicable to Bank's cause of action, in the interest of judicial economy, we now turn to Bank's argument that Borrower's subsequent payments and acknowledgment revived the debt.

**{19}** Section 37-1-16 provides for revival of causes of action arising from contracts and provides in relevant part:

> Causes of action founded upon contract shall be revived by the making of any partial or installment payment thereon or by an admission that the debt is unpaid, as well as by a new promise to pay the same; but such admission or new promise must be in writing, signed by the party to be charged therewith.

Section 37-1-16 further provides that "[s]uch a cause of action shall be deemed to have accrued upon the date of such partial or installment payment, admission of indebtedness or promise to pay." Revival through partial payment occurs where "payment is made under circumstances that warrant a clear inference that the debtor acknowledges and is willing to pay a further indebtedness." *Corona v. Corona*, 2014-NMCA-071, ¶ 14, 329 P.3d 701 (internal quotation marks and citation omitted). "However, for a partial payment to revive an action, the partial payment must be voluntary." *Lea Cnty. State Bank*, 2015-NMCA-026, ¶ 11.

**{20}** Bank argues that Borrower's payments between September 2009 and December 2010 and his acknowledgment of said payments in an affidavit filed in the district court in 2011, revived the debt and therefore Bank's 2016 complaint was timely. Borrower responds that the payments relied upon by Bank cannot serve to revive the debt because the payments were made pursuant to a forbearance agreement and therefore none of the payments were made pursuant to the promissory note. Defendant also argues that his statements in the affidavit at issue did not admit any debt owed to Bank.

**{21}** In September 2009 Borrower entered into a forbearance agreement with Quantum in which he acknowledged that payments under the Note were delinquent and that he was in default of the Note terms. The forbearance agreement stipulated that for the duration of the agreement Quantum would not require Borrower to make regularly monthly payments on the Note so long as he made the scheduled payments detailed in the agreement. Quantum also agreed to forbear from proceeding with foreclosure provided that the scheduled payments were made. The agreement further stipulated that if Borrower made each of the scheduled payments and cured the default, the regular course of monthly payments would resume. However, if all of the scheduled payments were made but default was not cured, Quantum could proceed with foreclosure or at its discretion enter into further payment arrangements. By signing the agreement Borrower acknowledged that it was an attempt to avoid foreclosure and that he entered into the agreement voluntarily.

**{22}** In December 2011 Borrower submitted to the district court an affidavit attached to his response to Bank's motion for summary judgment in which he attested to the following:

> Under [the Agreement] dated September 10, 2009, Quantum demanded, and I paid, a $20,000 down payment, plus $2,500 per month for six months. *In good faith, I continued to pay $2,500 per month from March through December 2010, even though I had no agreement or loan modification in effect, being told by a Quantum representative that documents were being prepared for a loan modification.* The loan modification presented to me by Quantum in late December 2010 was for approximately $3,000 per month—$500 more than I had been paying. None of the money I paid during the period noted was used to pay down my loan principal.

(Emphases added.) Bank did not challenge Borrower's attestations below nor does it do so on appeal.

**{23}** Construing the forbearance agreement and Borrower's affidavit together, we conclude that Borrower's voluntary payment in December 2010 revived Bank's cause of action. As evidenced by Borrower's affidavit and the terms of the agreement itself, the forbearance agreement was an attempt to avoid foreclosure and continue the loan relationship. Borrower's affidavit shows that he made each of the payments required under the agreement and continued making payments outside of the agreement in "good faith" until December 2010. Borrower attested that his good faith payments were made with the understanding that a loan modification would occur despite there then being no agreement in place. Thus, Borrower voluntarily made these payments with the intent to continue the loan relationship. Accordingly, we hold that Borrower's voluntary payment in December 2010 revived Bank's cause of action. *See Corona*, 2014-NMCA-071, ¶ 14 ("Partial payment of a debt will renew a barred debt when such payment is made under circumstances that warrant a clear inference that the debtor acknowledges and is willing to pay a further indebtedness." (internal quotation marks and citation

omitted)); *see also Lea Cnty. State Bank*, 2015-NMCA-026, ¶ 11 (stating "for a partial payment to revive an action, the partial payment must be voluntary").

**{24}**     Consequently, we further conclude that Bank's complaint, refiled on March 23, 2016, was timely. While we do not know the exact date of Borrower's last payment, even if we assume that he remitted payment on December 1, 2010, the time between this payment and Bank's refiling on March 23, 2016, is approximately five years and three months. This length of time is within the six-year statute of limitations set out in both Sections 37-1-3 and 55-3-118(a). Because we conclude that Borrower's December 2010 payment revived Bank's cause of action and that Bank's 2016 complaint was timely, we need not address the district court's findings concerning deceleration or tolling. For these reasons, we reverse the district court's dismissal of Bank's complaint.

**{25}**     To the extent Borrower argues that his December 2010 payment could not revive the debt because it was not applied to principle or interest, we are unpersuaded. Borrower provides no authority to support his argument and we see no material distinction between payments applied to delinquent amounts owed on the debt and payments applied to the principle and interest; in either case the payments were applied to the debt created by the promissory note. Indeed, the forbearance agreement specifies "[Quantum] will apply funds received under this Agreement pursuant to the terms of the Note and the Security Instrument."

**{26}**     Finally, to the extent Borrower argues that he never acknowledged a debt owed to Bank because—as he has argued throughout this case—Bank lacks standing, we point out that the district court's dismissal does not include a finding on this issue. Further, standing was not directly addressed in briefing and Borrower's passing reference to the issue does not substantively develop his argument. Without a ruling from the district court and given the lack of developed argument on appeal, we decline to address Borrower's standing arguments.

**CONCLUSION**

**{27}**     For the foregoing reasons we reverse the district court's dismissal and remand this matter to the district court for proceedings in accordance with this opinion.

**{28}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**